Geraldine A. Wyle, State Bar No. 89735
Jeffrey D. Wexler, State Bar No. 132256
Vivian Lee Thoreen, State Bar No. 224162
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
601 South Figueroa, Suite 3900
Los Angeles, California 90017
Telephone No.: 213-892-4992
Fax No.: 213-892-7731
gwyle@luce.com
jwexler@luce.com
vthoreen@luce.com

Attorneys for James P. Spears,
Temporary Conservator of the Person and
Temporary Co-Conservator of the Estate

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| In re the Conservatorship of the Person and the Estate of<br><br>BRITNEY JEAN SPEARS,<br><br>           Temporary Conservatee. | CASE NO. CV 08-1021 PSC (RCx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND [28 U.S.C. § 1447(c)]**<br><br>Date:  March 17, 2008<br>Time:  1:30 p.m.<br>Place: Courtroom 790<br>          Roybal Building |

1

## **TABLE OF CONTENTS**

2

**Page**

3 INTRODUCTION .................................................................................. 1

4 FACTUAL BACKGROUND AND PROCEDURAL HISTORY .......................... 3

5  A. The Initiation of the Conservatorship Proceedings .................... 3

6  B. The February 4, 2008 Hearing and the February 6, 2008
7   Orders .......................................................................... 5

  C. The February 7, 2008 *Ex Parte* Application ........................... 7
8
  D. The February 14, 2008 Hearing ........................................ 7
9
  E. The Purported Removal .................................................. 7
10
  F. Future Proceedings ...................................................... 8
11
 LEGAL STANDARD ........................................................................ 9
12
 LEGAL ARGUMENT ....................................................................... 9
13
14 I. REMOVAL IS IMPROPER BECAUSE THE PROBATE COURT
  HAS FOUND THAT BRITNEY LACKS THE CAPACITY TO HIRE
15  AS ATTORNEY, AND MR. EARDLEY CANNOT REMOVE THE
  CONSERVATORSHIP PROCEEDINGS ON HIS OWN BEHALF ........... 9

16 II. REMOVAL IS IMPROPER BECAUSE THERE IS NO FEDERAL
17  QUESTION JURISDICTION ...................................................... 11

18  A. Removal is Improper Because No Federal Question
   Appears on the Face of the Well-Pleaded Petitions for
19   Appointment of a Conservator ........................................ 11

20  B. There is No Federal Question Jurisdiction under *Grable &*
   *Sons* ..................................................................... 13

21   1. The Notice of Removal's Claims Concerning the
22    Food, Drug and Cosmetics Act do Not Demonstrate
    Federal Question Jurisdiction ................................ 13

23   2. The Notice of Removal's Miscellaneous
    Allegations do Not Demonstrate Federal Question
24    Jurisdiction ..................................................... 19

25 III. THE COURT SHOULD AWARD MR. SPEARS HIS COSTS AND
  ATTORNEYS' FEES INCURRED AS A RESULT OF THE
26  REMOVAL .......................................................................... 22

27 CONCLUSION .............................................................................. 24

28

i

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

**Page**

*Adams v. Aminastar Defense Servs., Inc.,*
   901 F. Supp. 78 (D. Conn. 1995) ....................................................... 11

*Ange v. Templer,*
   418 F. Supp. 2d 1169 (N.D. Cal. 2006) ............................................. 15

*Atwood v. Fort Peck Tribal Counsel,*
   ___ F.3d ___, 2008 WL 161347 (9th Cir. Jan. 18 2008) ..................... 19

*Ballon v. The Women's Cancer Center,*
   Case No. 05-6543 NM (SSx) (C.D. Cal. Jan. 27, 2006) ...............3, 11, 23, 24

*Berberian v. Gibney,*
   514 F.2d 790 (1st Cir. 1975) ............................................................... 8

*California ex rel. Lockyear v. Dynegy, Inc.,*
   375 F.3d 831,
   *amended,* 387 F.3d 966 (9th Cir. 2004),
   *cert. denied,* 544 U.S. 974 (2005) ............................................9, 11, 12

*Caterpillar Inc. v. Williams,*
   482 U.S. 386 (1987) ......................................................................... 11

*Cok v. Cosentino,*
   876 F.2d 1 (1st Cir. 1989) ................................................................. 21

*Conway v. Delgado,*
   1992 WL 189428 (D.D.C. July 21, 1992) ......................................... 11

*Duncan v. Stuetzle,*
   76 F.3d 1480 (9th Cir. 1996) .............................................................. 9

*Empire HealthChoice Assurance, Inc. v. McVeigh,*
   547 U.S. 677, 126 S. Ct. 2121 (2006) ............................................... 17

*Franchise Tax Bd. v. Construction Laborers Vacation Trust,*
   463 U.S. 1 (1983) ............................................................................. 11

*Gaus v. Miles, Inc.,*
   980 F.2d 564 (9th Cir. 1992) .............................................................. 9

*Geiger v. Artco Enter., Inc.,*
   910 F. Supp. 130 (S.D.N.Y. 1996) ................................................... 11

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,*
   545 U.S. 308 (2005) ........................................13, 14, 15, 17, 18, 19

*Gully v. First Nat'l Bank in Meridian,*
   299 U.S. 109 (1936) ......................................................................... 12

1
2

**TABLE OF AUTHORITIES**
**(cont'd)**

**Page**

3
4

*Hemon v. Office of Public Guardian,*
878 F.2d 13 (1st Cir. 1989) ........................................................................18, 19

5

*Housing Auth. of Atlanta v. Millwood,*
472 F.2d 268 (5th Cir. 1973) ...............................................................................11

6
7

*Kane v. Republica de Cuba,*
211 F. Supp. 855 (D.P.R. 1962) .......................................................................11

8

*Linden v. Chase Manhattan Corp.,*
52 F. Supp. 2d 387 (S.D.N.Y. 1999) ....................................................................8

9
10

*Marshall v. Marshall,*
547 U.S. 293 (2006) .............................................................................................19

11

*Martin v. Franklin Capital Corp.,*
546 U.S. 132 (2005) .............................................................................................22

12
13

*Merrell Dow Pharms. Inc. v. Thompson,*
478 U.S. 804 (1986) .............................................................................................16

14

*Newman & Cahn, LLP v. Sharp,*
38 F. Supp. 2d 115 (E.D.N.Y. 2005) ....................................................................11

15
16

*Nixon v. Wheatley,*
368 F. Supp. 2d 635 (E.D. Tex. 2005) ..................................................................8

17

*Polanco v. 21 Arden Realty Corp.,*
121 B.R. 425 (S.D.N.Y. 1990) ............................................................................24

18
19

*Prize Frize, Inc. v. Matrix Inc.,*
167 F.3d 1261 (9th Cir. 1999) .............................................................................9

20

*Rivet v. Regions Bank,*
522 U.S. 470 (1998) .............................................................................................12

21
22

*State of Wisconsin v. Missionaries to the Preborn,*
798 F. Supp. 542 (E.D. Wis. 1992) ......................................................................24

23

*Sullivan v. Dunne,*
198 Cal. 183 (1926) .............................................................................................10

24

**STATUTES**

25

21 U.S.C. §§ 301 *et seq.* ............................................................................13, 15, 16

26

28 U.S.C. § 1446(a) ...................................................................................................4, 22

27

28 U.S.C. § 1446(d) .........................................................................................................7

28

28 U.S.C. § 1447(c) ...................................................................................3, 9, 22, 24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES
## (cont'd)

Page

28 U.S.C. § 1450.................................................................................... 10

42 U.S.C. § 1983.................................................................................... 21

42 U.S.C. §§ 1983 *et seq.*...................................................................... 21

Cal. Bus. & Prof. Code § 6104 .............................................................. 23

Cal. Prob. Code § 1800.......................................................................... 18

Cal. Prob. Code § 2355............................................................................ 4

Cal. Welf. & Inst. Code § 5150 ............................................................... 3

## RULES

Fed. R. Civ. P. 11 ...................................................................... 10, 22, 23

## MISCELLANEOUS

P. Vapnek. M. Tuft. E. Peck & H. Wiener. *California Practice Guide: Professional Responsibility*, ¶ 10:192 (2008).................................... 10

**INTRODUCTION**

In a brazen – but vain – attempt to strip a probate court of jurisdiction before it could enter Orders extending the temporary conservatorship of Britney Jean Spears ("Britney"), an attorney without a client has purported to remove the conservatorship proceedings (the "Conservatorship Proceedings") to this Court based upon federal question jurisdiction that does not exist.  By this motion, Britney's father James P. Spears ("Mr. Spears"), the temporary conservator of Britney's person and the temporary co-conservator of her estate, respectfully asks this Court to remand the Conservatorship Proceedings to the Probate Court so that it can continue to administer the conservatorship in accordance with the obligations entrusted to it by California law.

On February 1, 2008, Mr. Spears initiated the Conservatorship Proceedings by filing petitions for appointment of temporary conservators of the person and the estate with the Probate Department of the Los Angeles Superior Court (the "Probate Court").  On the same day, the Probate Court filed Letters of Temporary Conservatorship and Orders Appointing Temporary Conservators, and named Samuel D. Ingham III as Britney's court-appointed attorney.  On February 6, 2008, after an attorney had purported to appear on Britney's behalf at a February 4, 2008 hearing, the Probate Court entered Orders in which it extended the temporary conservatorship until February 14, 2008 and specifically found that "Ms. Spears does not have the capacity to retain counsel."

On February 14, 2008 – the day that the Letters of Temporary Conservatorship were to expire – the Probate Court held another hearing, concluding at 2:04 p.m., at which it extended the temporary conservatorship to March 10, 2008.  At almost exactly the same time that the Probate Court concluded its hearing, attorney Jon Eardley ("Mr. Eardley"), purporting to act as Britney's attorney, filed a Notice of Removal with this Court purporting to remove the Conservatorship Proceedings in their entirety.  At 2:26 p.m. on February 14, 2008 –

1

about 20 minutes after the Probate Court concluded its hearing – Mr. Eardley caused a copy of the Notice of Removal to be filed with the Clerk's Office of the Superior Court.

Mr. Spears bases this motion to remand on two grounds, either of which is sufficient by itself to require remand.  First, the case must be remanded because Mr. Eardley lacked the ability to file the Notice of Removal.  The Probate Court appointed experienced counsel for Britney from the Los Angeles Superior Court's Probate Volunteer Panel.  Thereafter, the Probate Court found – in an Order that remains binding notwithstanding the removal – that Britney lacks the capacity to retain counsel, and ordered further proceedings to determine Britney's capacity, which proceedings are currently pending.  Because Britney could not have engaged Mr. Eardley to act on her behalf and Mr. Eardley as a non-party otherwise lacks the power to remove the Conservatorship Proceedings, the Notice of Removal is invalid.

Second, even if Mr. Eardley were authorized to file a Notice of Removal on behalf of Britney – which he was not – the case must be remanded to Probate Court based upon a lack of federal question jurisdiction.  Under long-established authority, the existence of federal question jurisdiction must be determined based upon the allegations made in a well-pleaded complaint.  Here, the well-pleaded allegations in the conservatorship petitions do not present an issue of federal law, and Mr. Eardley's challenges to the administration of the conservatorships may not, as a matter of law, be considered in determining the existence of a federal question.  In any event, the allegation that is the centerpiece of Mr. Eardley's claim for federal question jurisdiction – his allegation that Mr. Spears "supplements" Britney's medications – disregards the fact that the Probate Court has ***not*** granted Mr. Spears medical powers and that medications therefore do not fall within the scope of the conservatorship.

2

Pursuant to 28 U.S.C. § 1447(c), Mr. Spears also asks the Court to award him his "just costs and any actual expenses, including attorneys' fees, incurred as a result of the removal." *Id.* Mr. Eardley lacked any reasonably objective basis for filing the Notice of Removal, not only because the Probate Court had expressly found that Britney lacks the capacity to retain counsel but because the claimed basis for federal question jurisdiction fails as a matter of law.[1] An award of costs and fees is also appropriate because the Notice of Removal was apparently filed in an unsuccessful attempt to stop the Probate Court from extending the conservatorship, thereby allowing the conservatorship to expire on February 14, 2008, a motive which is highly improper, given the Probate Court's findings that Britney is unable to care for her own needs. Mr. Spears asks that costs and fees be awarded jointly and severally against Mr. Eardley and any person or persons with whom he has worked in concert with the removal, or in whose agency he acts, and that Mr. Eardley be ordered to provide a full and complete statement, under penalty of perjury, identifying all such persons and stating each person's role with regard to the removal.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.      The Initiation of the Conservatorship Proceedings.

Early in the morning of January 31, 2008, Britney was taken to UCLA Medical Center and placed on a 72-hour psychiatric hold pursuant to Cal. Welf. & Inst. Code § 5150. On February 1, 2008, Mr. Spears initiated the Conservatorship Proceedings by filing: (1) Petitions for Appointment of Temporary Conservators of the Person and the Estate (the "Temporary Petitions"); and (2) Petitions for Appointment of Probate Conservators of the Person and the Estate (the "Permanent

---

[1] An award of costs and fees is especially appropriate because Mr. Eardley in 2005 purported to remove a lawsuit to the Central District on behalf of a party that he did not represent, and was ordered thereafter to pay the attorneys' fees incurred by the plaintiffs as a result of such removal. *See Ballon v. The Women's Cancer Center*, Case No. 05-6543 NM (SSx) (C.D. Cal. Jan. 27, 2006) (Ex. A hereto).

3

1  Petitions").[2]  *See* Request for Judicial Notice ("RJN"), Exs. A-D.   Each of these

2  petitions is a form pleading filed on the mandatory forms adopted by the Judicial

3  Counsel of California for conservatorship proceedings.  *See id.*

4  The Temporary Petitions sought a temporary conservatorship to "provide for

5  temporary care, maintenance, and support" and to "protect property from loss or

6  injury" based upon the grounds set forth in Confidential Supplemental Information

7  that was filed under seal pursuant to statute.  Temporary Petitions, ¶ 3 (Exs. B, D to

8  RJN).  The Temporary Petitions asked the Probate Court to grant certain powers,

9  including, in the Temporary Petition for conservatorship of the person, the power to

10  make all medical and health care decisions for Britney under Cal. Prob. Code

11  § 2355.  *See* Temporary Petitions, Att. 1.d (Exs. B, D to RJN).  The Permanent

12  Petitions sought similar relief on similar grounds.  *See* Permanent Petitions (Exs. A,

13  C to RJN).

14  At a hearing on February 1, 2008, the Probate Court, Commissioner Reva

15  Goetz presiding, found it appropriate to establish temporary conservatorships over

16  Britney's person and estate.  That day, the Probate Court filed: (1) Letters of

17  Temporary Conservatorship of the Person; (2) Letters of Temporary

18  Conservatorship of the Estate; (3) an Order Appointing Temporary Conservators of

19  the Person; and (4) an Order Appointing Temporary Conservator of the Estate

20  (collectively, the "February 1, 2008 Letters and Orders").  *See* February 1, 2008

21  Letters and Orders (Exs. U-X to RJN).  The Probate Court named: (1) Mr. Spears as

22  temporary conservator of Britney's person and as temporary co-conservator of

23  _____

24  [2]    By statute, a notice of removal must include a copy of "all process, pleadings, and orders served upon" the defendant submitting the notice.  28 U.S.C. § 1446(a).

25  Mr. Eardley failed to attach any such documents to the Notice of Removal, ostensibly because "[t]he documents have been sealed, thus making it inappropriate

26  to divulge the initial [*sic*]."  Notice of Removal, ¶ 1.  In point of fact, these petitions and most of the other documents filed in the Probate Court are no longer under seal,

27  and Mr. Eardley has no excuse for his failure to comply with Section 1446(a).  In order to assist the Court in ruling on this motion, the RJN filed concurrently

28  herewith attaches the documents that have been publicly filed with or by the Probate Court in connection with the Conservatorship Proceedings.

Britney's estate; and (2) Andrew M. Wallet, an attorney, as temporary co-conservator of Britney's estate.  *See id.*  The Probate Court granted some – but not all – of the relief sought in the Temporary Petitions and, in particular, ***declined*** to grant Mr. Spears the power to make medical and health care decisions; the Probate Court also granted the temporary co-conservators certain powers in addition to those they had requested.  *See id.*  By their terms, the February 1, 2008 Letters and Orders expired on February 4, 2008, the date for which the Probate Court set a follow-up hearing.  *See id.*  The Probate Court set March 10, 2008 as the hearing date on the Permanent Petitions.  *See* RJN, Exs. A, C.

At the same hearing, the Probate Court entered a Civil Harassment Temporary Restraining Order against Britney's self-styled "manager," Osama ("Sam") Lutfi, ordering him not to have any contact with Britney.  *See* RJN, Ex. S. The Probate Court scheduled the hearing on an injunction for February 22, 2008. *See id.*

Later on February 1, 2008, the Court appointed a Court Investigator and appointed Mr. Ingham as Britney's counsel.  *See id.*, Exs. Y-Z.

**B.      The February 4, 2008 Hearing and the February 6, 2008 Orders.**

On February 4, 2008, the Probate Court held another hearing to determine whether to extend the conservatorships.  *See* February 6, 2008 Order Extending Temporary Letters of Conservatorship of the Person; February 6, 2008 Order Extending Temporary Conservatorship of the Estate (collectively, the "February 6, 2008 Orders") (Exs. LL, MM to RJN).  Mr. Ingham attended the hearing as Britney's Court-appointed counsel.  *See id.*  The Court waived Britney's attendance at the hearing based upon a physician's declaration that she did not have the ability to attend the hearing and Mr. Ingham's report that she was given the opportunity through him to communicate with the Court but that she chose not to do so.  *See id.*

Adam F. Streisand of Loeb & Loeb LLP appeared at the February 4, 2008 hearing purportedly on behalf of Britney.  *See id.*  The Probate Court found, based

5

1   upon the pleadings that had been filed, a physician's declaration, and Dr. Ingham's

2   report, that "Ms. Spears does not have the capacity to retain counsel and she lacked

3   the capacity to retain Adam F. Streisand as her counsel." *Id.*  Similarly, the Probate

4   Court ordered that "Ms. Spears does not have the capacity to retain counsel." *Id.*

5   The Probate Court extended the conservatorship from February 4, 2008 until

6   February 14, 2008, for which date it scheduled another hearing.  *See id.*

7          In the February 6, 2008 Orders and in Letters of Temporary Conservatorship

8   of the Person and Letters of Temporary Conservatorship of the Estate filed on

9   February 6, 2008 (collectively, the "February 6, 2008 Letters"), the Probate Court

10  expanded certain powers given to the co-conservators.  *See* February 6, 2008 Orders

11  (Exs. LL, MM to RJN); February 6, 2008 Letters (Exs. NN, OO to RJN).  In order

12  to deal with the problem of attorneys other than Britney's Court-appointed attorney

13  purporting to undertake her representation and the issues of Britney's lack of

14  capacity and potential susceptibility to undue influence, the Order and Letter

15  concerning the temporary conservatorship of the person were amended to read as

16  follows:

17              The Temporary Conservator shall have the power to restrict and
    limit visitors by any means, provided that the Temporary Conservator
18          shall not prevent Conservatee from meeting with her court-appointed
            attorney, Mr. Ingham, except to approve the location for any meetings
19          or visits, and to arrange for appropriate security, in order to protect the
            Conservatee. ***Any and all meetings between the Conservatee and any***
20          ***attorneys who are not Mr. Ingham are subject to the Temporary***
            ***Conservator's approval, including the location for the meeting.  The***
21          ***Temporary Conservator shall also have the power to be present with***
            ***his attorneys at any such meetings and to ensure that there is***
22          ***adequate security.***

23  February 6, 2008 Order and Letters re Temporary Conservatorship of the Person

24  (emphasis added) (Exs. LL, NN to RJN).  The Court did not, however, grant Mr.

25  Spears the power to make medical and health care decisions.  *See id.*

26         The media widely reported the Probate Court's findings at the February 4,

27  2008 hearing concerning Britney's lack of capacity to hire counsel, and the Probate

28  Court's Orders themselves were widely disseminated on the Internet.

**C.   The February 7, 2008 *Ex Parte* Application.**

On February 7, 2008, Mr. Spears applied to the Probate Court *ex parte* for an Order granting the co-conservators the authority to fire Britney's business manager, Howard Grossman.  *See* RJN, Exs. PP-UU.  The Probate Court granted such authority.  *See id.*, Ex. VV.

**D.   The February 14, 2008 Hearing.**

On February 14, 2008, the date on which the conservatorships were to expire pursuant to the February 6, 2008 Letters, the Probate Court held a hearing to determine whether to extend the conservatorship.  *See* February 14, 2008 Minute Order (Ex. AAA to RJN).  The Probate Court found good cause for extending the Temporary Letters – and, thus, the conservatorship – until March 10, 2008.  *See id.*

The Probate Court completed the February 14, 2008 hearing at about 2:04 p.m.[3]  Immediately after that hearing, the Probate Court filed new Letters of Temporary Conservatorship of the Person and of the Estate (the "February 14, 2008 Letters"), expiring on March 10, 2008.  *See* RJN, Exs. BBB, CCC.

**E.   The Purported Removal.**

At 2:03 p.m. on February 14, 2008, Mr. Eardley caused his Notice of Removal to be filed in the Clerk's Office of this Court.  *See* Federal Notice of Removal at 1.  At 2:26 p.m. on February 14, 2008, Mr. Eardley caused a Notice of Removal to be filed with the Clerk's Office of the Los Angeles Superior Court.[4]  *See* State Notice of Removal at 1.

Under 28 U.S.C. § 1446(d), the filing of "a copy of the notice [of removal] with the notice of the clerk of such State court . . . shall effect the removal and the

---

[3]   The Court reporter has not yet completed the transcript of the February 14, 2008 hearing, but she has confirmed that the hearing ended at 2:04 p.m.  Mr. Spears will file the transcript with the Court once he receives it.

[4]   According to media reports, the Notice of Removal was filed on Mr. Eardley's behalf by Michael Sands, who handed out copies of it to the media at the Probate Court.  Mr. Sands has been retained as a publicist by Mr. Lutfi, the man subject to the Probate Court's temporary restraining order.

State court shall proceed no further unless and until the case is remanded." *Id.*
Thus, between the time that the notice of removal was filed with this Court at 2:03
p.m. on February 14, 2008 and the time that the Superior Court was notified of the
filing of the notice of removal, both this Court and the Probate Court had concurrent
jurisdiction over the Conservatorship Proceedings. *See*, *e.g.*, *Berberian v. Gibney*,
514 F.2d 790, 792-93 (1st Cir. 1975) ("the jurisdiction of the federal court attaches
as soon as the petition for removal is filed with it, and . . . both state and federal
courts have jurisdiction until the process of removal is completed" by the giving of
notice to the adverse party and to the state court); *Nixon v. Wheatley*, 368 F. Supp.
2d 635, 640 (E.D. Tex. 2005) (same); *Linden v. Chase Manhattan Corp.*, 52 F.
Supp. 2d 387, 388 (S.D.N.Y. 1999) (same). The Probate Court therefore retained
jurisdiction over the Conservatorship Proceedings at the time of the February 14,
2008 hearing, and the February 14, 2008 Letters extending the conservatorship until
March 10, 2008 are and remain valid.

   F.     **Future Proceedings.**

      At the time of the purported removal, the Probate Court had scheduled two
hearings: (1) the hearing on a civil harassment injunction against Mr. Lutfi,
scheduled for February 22, 2008; and (2) the hearing on a permanent
conservatorship, scheduled for March 10, 2008, at which time the Court must
determine, based upon expert and lay testimony, whether, *inter alia*, there is a
factual basis for making the conservatorship permanent and, if so, the powers to be
granted to the co-conservators of the estate. *See* Declaration of Andrew M. Wallet
("Wallet Decl."), ¶ 5.

      Prior to the purported removal, Mr. Wallet was in the process of taking action
with regard to the myriad financial/legal business issues that need immediate
attention, as set forth in more detail in the Wallet Declaration. *See id.*, ¶ 6. The
removal action has thwarted Mr. Wallet's ability to properly discharge his duties to
the conservatee and her estate. *See id.* Because of the time sensitivity of these

1   matters – in particular the approval of a litigation settlement in one matter – the co-

2   conservators will need to seek appropriate relief in the very near future.  *See id.*, ¶ 7.

3   Unless the Conservatorship Proceedings are immediately remanded, the co-

4   conservators will have no choice but to seek such relief from this Court, *see id.*,

5   which will impose a burden upon this Court because it lacks the Probate Court's

6   experience and expertise in dealing with conservatorship proceedings and its

7   expedited procedures for addressing and resolving such motions.

8                                    **<u>LEGAL STANDARD</u>**

9          "The removal statute is strictly construed against removal jurisdiction, and the

10   burden of establishing federal jurisdiction falls to the party invoking the statute."

11   *California ex rel. Lockyear v. Dynegy, Inc.*, 375 F.3d 831, 838, *amended*, 387 F.3d

12   966 (9th Cir. 2004), *cert. denied*, 544 U.S. 974 (2005).  *See, e.g.*, *Prize Frize, Inc. v.*

13   *Matrix Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999) ("[t]he burden of establishing

14   federal jurisdiction is on the party seeking removal, and the removal statute is

15   strictly construed against removal jurisdiction").  The Ninth Circuit applies a

16   "'strong presumption' against removal jurisdiction."  *Gaus v. Miles, Inc.*, 980 F.2d

17   564, 566 (9th Cir. 1992) (citation omitted).  If there is any doubt as to the right of

18   removal in the first instance, "federal jurisdiction must be rejected."  *Duncan v.*

19   *Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996).  *See Gaus*, 980 F.2d at 566 (same).

20          Under 28 U.S.C. § 1447(c), an improperly removed case must be remanded to

21   state court "[i]f at any time before final judgment it appears that the district court

22   lacks subject matter jurisdiction."  *Id.*

23

24                                    **<u>LEGAL ARGUMENT</u>**

25   I.    **<u>REMOVAL IS IMPROPER BECAUSE THE PROBATE COURT HAS
       FOUND THAT BRITNEY LACKS THE CAPACITY TO HIRE AN
       ATTORNEY, AND MR. EARDLEY CANNOT REMOVE THE
       CONSERVATORSHIP PROCEEDINGS ON HIS OWN BEHALF.</u>**

26

27          In the February 6, 2008 Orders reflecting the Probate Court's findings at the

28   February 4, 2008 hearing, the Probate Court ordered that "Ms. Spears does not have

                                            9

the capacity to retain counsel." February 6, 2008 Orders (Exs. LL, MM to RJN). Given that these Orders were in effect at the time of the purported removal, Britney lacked the capacity to hire Mr. Eardley to file the Notice of Removal on her behalf, and therefore could not have hired him.[5]  Furthermore, by statute, the Orders entered by the Probate Court prior to removal remain binding after the purported removal. *See* 28 U.S.C. § 1450 ("[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court").

As a result, Mr. Eardley's purported filing of the Notice of Removal on Britney's behalf is invalid. *Cf. Sullivan v. Dunne*, 198 Cal. 183, 189-93 (1926) (the incapacity of a client terminates the authority of an attorney to act on the client's behalf) (citing Cal. Civ. Code § 2356); P. Vapnek, M. Tuft, E. Peck & H. Wiener, *California Practice Guide: Professional Responsibility*, ¶ 10:192 (2008) ("incapacity of client terminates lawyer's authority to act").  The Probate Court has appointed an attorney with the power to act on Britney's behalf with regard to the conservatorship proceedings, Mr. Ingham.  Mr. Ingham is the sole attorney with the power to file a notice of removal on Britney's behalf, and he has not done so.

Nor, of course, may Mr. Eardley remove this matter unless he is doing so on behalf of a client.  As this Court, the Honorable Nora Manella presiding, explained in a 2006 Order awarding attorneys' fees against Mr. Eardley for removing a lawsuit in which he did not represent the party he purported to represent in filing the notice of removal:

> . . . ***Mr. Eardley lacked an objectively reasonable basis for seeking removal, because he did not represent Defendant WCC. . . .  Every***

---

[5]     Because Britney's lack of capacity is dispositive of the issue whether Britney could have retained Mr. Eardley to file the Notice of Removal, Mr. Spears will not address the issue whether Britney actually spoke with Mr. Eardley before he filed the Notice of Removal.  For now, Mr. Spears notes that the Notice of Removal's allegation – made pursuant to Fed. R. Civ. P. 11 – that "Britney has been denied the right to make or receive telephone calls," Notice of Removal, ¶ 3, is inconsistent with any contention that Britney had telephone conversations with Mr. Eardley.

*court to have addressed the issue has held that non-parties have no right to remove cases to federal court.* See, e.g., Newman and Cahn, LLP v. Sharp, 38 F. Supp. 2d 115, 117 (E.D.N.Y. 2005) ("A non-party has no authority to seek removal under the removal statutes."); Geiger v. Artco Enter., Inc., 910 F. Supp. 130, 131 (S.D.N.Y. 1996) ("It is clear beyond peradventure of a doubt that the right of removal is vested exclusively in defendants."); Adams v. Adminastar Defense Servs., Inc., 901 F. Supp. 78, 79 (D. Conn. 1995) (only a defendant, who is by implication a party in state court, has standing to remove); Conway v. Delgado, No. 92-0905, 1992 WL 189428, *2 (D.D.C. July 21, 1992) (only defendants have standing to remove); Kane v. Republica De Cuba, 211 F. Supp. 855, 856-58 (D.P.R. 1962) (a nonparty who has not formally intervened may not remove a case from state court); see also Housing Auth. of Atlanta v. Millwood, 472 F.2d 268, 272 (5th Cir. 1973) (where an entity has not been properly served in state court, it is not a party and removal jurisdiction cannot be premised on its presence in the action). . . .

*Ballon v. The Women's Cancer Center* at 4:4-26 , Case No. 05-6543 NM (SSx) (C.D. Cal. Jan. 27, 2006) (emphasis added) (Ex. A hereto).

Because Britney's lack of capacity means that she cannot have engaged Mr. Eardley as her counsel and because Mr. Eardley lacks the power to remove the Conservatorship Proceedings without Britney as a client, the Proceedings must be remanded to the Probate Court.

## II. REMOVAL IS IMPROPER BECAUSE THERE IS NO FEDERAL QUESTION JURISDICTION.

### A. Removal is Improper Because No Federal Question Appears on the Face of the Well-Pleaded Petitions for Appointment of a Conservator.

"In determining the presence or absence of federal jurisdiction, we apply the "'well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *California ex rel. Dynegy*, 375 F.3d at 838 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). *See, e.g., Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 10 (1983) ("[f]or better or worse, under the present statutory scheme as it has existed since 1887, a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case 'arises under' federal law").

"'A defense is not part of a plaintiff's properly pleaded statement of his or her claim.'" *California ex rel. Dynegy*, 375 F.3d at 838 (quoting *Rivet v. Regions Bank*, 522 U.S. 470, 475 (1998)).  "Rather, 'a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.'" *Id.* (quoting *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 112 (1936).  Accordingly, "[t]he federal issue 'must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal.'" *Id.* (quoting *Gully*, 299 U.S. at 113).

Here, the "complaint" that Mr. Eardley has sought to remove is the petitions for conservatorship.  These petitions were filed on the statutorily mandated forms for seeking the appointment of a conservator.  *See* RJN, Exs. A-D.  The petitions seek appointment of temporary and permanent conservator of the person and co-conservators of the estate, alleging that Britney requires a conservator to "provide for temporary care, maintenance, and support" and to "protect property from loss or injury" because of the facts alleged in the Confidential Supplemental Information filed concurrently therewith.  *See id.*, Exs. A-D, ¶ 3.

These petitions are garden-variety Probate Court pleadings.  They do not allege, explicitly or implicitly, any issue of federal law as a predicate for the requested relief.  Under the rule that the existence of federal question jurisdiction supporting removal is to be decided on the face of a well-pleaded complaint, there is no basis for Mr. Eardley's purported removal of the Conservatorship Proceedings.

While the Notice of Removal acknowledges that "normally in a removal action the District Court must take the pleadings as it finds them," it argues that: (1) "a different approach is utilized when a colorable claim of manipulation of pleadings is raised"; and (2) "upon allegations of such artful pleading designed to prevent removal, federal courts may look beyond the pleadings to determine the true intent of the parties."  Notice of Removal, ¶ 15.  Under the rule cited in the Notice

1  of Removal, the Court may pierce the pleadings to determine whether the plaintiff's

2  complaint actually alleges a claim arising under federal law.

3       Here, none of the allegations made in the Notice of Removal relates to the

4  claims made in the conservatorship petitions.  Instead, they purport to challenge the

5  Conservatorship Proceedings or the co-conservators' alleged actions taken under the

6  authority of the Letters and Orders issued by the Probate Court.  Accordingly, such

7  allegations provide no basis for finding that the conservatorship petitions actually

8  allege claims sounding in federal law, and removal was therefore improper.

9      **B.**    **There is No Federal Question Jurisdiction under _Grable & Sons_.**

10         **1.**    **The Notice of Removal's Claims Concerning the Food, Drug**
              **and Cosmetics Act do Not Demonstrate Federal Question**
11            **Jurisdiction.**

12      The Notice of Removal argues that there is federal question jurisdiction over

13 this action because it "touches upon important issues of federal law, to wit whether

14 an adult child may be subjected by her parents to their complete and total control in

15 that the petitioner and conservator supplements the medications scheduled under the

16 Food, Drug, and Cosmetics Act, 21 U.S.C. § 301 et seq., and prescribed to her by

17 her doctors with a near total deprivation of civil rights."  Notice of Removal, ¶ 5.

18      As an initial matter, the fact that Mr. Spears is Britney's father is irrelevant to

19 any issue presented by the Conservatorship Proceedings.  Instead, the powers

20 granted to Mr. Spears and to Mr. Wallet, the co-conservator of the estate, are

21 derived solely from their position as conservators.

22      Furthermore, this argument fails because it is based upon an incorrect factual

23 predicate.  The Probate Court did **_not_** grant Mr. Spears the power to make medical

24 or health care decisions for Britney.  _See_ RJN, Exs. U, W.  Accordingly, the

25 conservatorship proceeding does not implicate any issue concerning medications,

26 even under the version of the law espoused in the Notice of Removal.

27      In any event, the Notice of Removal is flatly wrong in asserting, _see_ Notice of

28 Removal, ¶¶ 6-11, that federal question jurisdiction exists in this case under _Grable_

1  *& Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005).  The

2  *Grable & Sons* Court observed that the "provision for federal-question jurisdiction

3  is invoked by and large by plaintiffs pleading a cause of action created by federal

4  law," but that there is "another longstanding, if less frequently encountered, variety

5  of federal 'arising under' jurisdiction, this Court having recognized for nearly 100

6  years that in certain cases federal-question jurisdiction will lie over state-law claims

7  that implicate significant federal issues."  *Id.* at 312.  "This doctrine captures the

8  commonsense notion that a federal court ought to be able to hear claims recognized

9  under state law that nonetheless turn on substantial questions of federal law, and

10 thus justify resort to the experience, solicitude, and hope of uniformity that a federal

11 forum offers on federal issues."  *Id.*  The Court explained that "the question is, does

12 a ***state-law claim*** necessarily raise a stated federal issue, actually disputed and

13 substantial, which a federal forum may entertain without disturbing any

14 congressionally approved balance of federal and state judicial responsibilities."  *Id.*

15 at 314 (emphasis added).

16      Thus, *Grable & Sons* recognized that, in a very limited number of cases, there

17 may be federal question jurisdiction over a state law claim that necessarily

18 implicates a substantial issue of federal law because such a claim arises under

19 federal law.  *See id.* at 312-20.  Because *Grable & Sons* does not call into question

20 the rule that the existence of federal question jurisdiction must be decided based

21 upon the ***claims*** asserted in a well-pleaded complaint, that case cannot support Mr.

22 Eardley's assertion that this Court has federal question jurisdiction based upon

23 alleged facts that do not appear in the petition and do not form the basis for the relief

24 set forth therein.

25      Even if the doctrine set forth in *Grable & Sons* could create federal question

26 jurisdiction based upon issues that are not implicated by the complaint – which it

27 cannot – that case could not justify the exercise of federal jurisdiction based upon

28 the Notice of Removal's allegations concerning the use of medications.

14

1    The Notice of Removal claims that *Grable & Sons* sets forth a four-factor test

2  for finding federal question jurisdiction, asserting that "the Court recognized federal

3  question jurisdiction where: (1) the federal question was 'important', (2) it was the

4  'only' seriously contested issue in the case, (3) a federal forum was needed to

5  'vindicate [federal] administrative action,' and (4) the likely recurrence of the

6  question was 'rare.'"  Notice of Removal, ¶ 7 (citing *Grable & Sons*, 545 U.S. at

7  315).

8    In so arguing, the Notice of Removal cherrypicks statements from *Grable &*

9  *Sons* and ignores the statement of the law, set forth above, actually provided by the

10  *Grable & Sons* Court that makes it clear that its analysis applies only to the

11  determination whether the complaint itself raises issues of federal law supporting

12  federal question jurisdiction.  *See Grable & Sons*, 545 U.S. at 314.  *See, e.g., Ange v.*

13  *Templer*, 418 F. Supp. 2d 1169, 1172 (N.D. Cal. 2006) (under *Grable & Sons*, a

14  claim "may only be removed to federal court if it meets certain conditions: (1) it

15  must raise a stated federal legal issue, (2) determination of the federal issue must be

16  necessary to resolution of the claim, (3) the federal issue must be actually disputed,

17  (4) the federal issue must be substantial, and (5) the federal court must be able to

18  entertain the claim "'without disturbing any congressionally approved balance of

19  federal and state judicial responsibilities'").  In any event, none of the factors

20  identified by the Notice of Removal is present here.

21    First, the Notice of Removal asserts that "the federal question is important

22  because Ms. Spears' prescribed medications are designed for out-patient use, yet she

23  is being confined by the conservator to the private prison of her own home, with no

24  opportunity to enjoy even a modicum of liberty or privacy whatsoever."[6]  *Id.*, ¶ 8.

25  The Notice of Removal cites generally to the Food, Drug and Cosmetics Act, 21

26  _____

27  [6]    The Notice of Removal does not and cannot explain why medications

28  "designed for out-patient use," Notice of Removal, ¶ 9, are inappropriate for in-
patient use.

15

U.S.C. §§ 301 *et seq.*, and refers to "the medications' disclosures concerning the circumstances of use" and "[p]harmaceutical labeling," without citing any specific statute.  *See* Notice of Removal, ¶¶ 5-6, 10.  However, the Food, Drug and Cosmetics Act imposes obligations on drug manufacturers, not physicians or laypeople following physicians' instructions.  Furthermore, the Supreme Court has already recognized that there is no federal question jurisdiction over a claim against a drug ***manufacturer*** alleging mislabeling in violation of the Food, Drug and Cosmetics Act even though that Act creates the applicable standard of care.  *See Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 807-17 (1986).  There could be no federal question jurisdiction here, where the relationship between the statutory labeling requirements and the alleged conduct is even more tenuous.

Second, the Notice of Removal claims that "[t]he only seriously contested issue in this case is the interplay between [Britney's] confinement and the taking of her prescribed medication."  Notice of Removal, ¶ 9.  This contention is frivolous.  As stated above, there is no issue in this case as to Britney's taking of her prescribed medication because the Probate Court has not granted medical powers.  During the 13 days between the filing of the petitions and the filing of the purported notice of removal, the Probate Court was presented with numerous serious issues, including, *inter alia*: (1) the scope of powers to be granted to Mr. Spears as conservator of the person and to Mr. Spears and Mr. Wallet as co-conservators of the estate, and modifications to those powers based upon new circumstances; (2) the issue whether a conservatorship over Britney is appropriate, to be determined based upon a report from an independent expert; (3) Britney's capacity to engage an attorney to represent her in this matter; (4) the propriety of a temporary restraining order against Mr. Lutfi; (5) whether the co-conservators should be given the power to terminate Mr. Grossman; and (6) an abortive challenge to the co-conservators, brought by Mr. Streisand.  *See* Wallet Decl., ¶ 4; RJN, Exs. A-CCC.  In the future, many additional issues will arise concerning the administration of the conservatorship.  *See* Wallet

Decl., ¶¶ 5-7.  This case is the polar opposite of *Grable & Sons*, where "the only legal or factual issue contested in the case" was "the meaning of the federal statute." *Grable & Sons*, 545 U.S. at 315.  *See Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 126 S. Ct. 2121, 2137 (2006) (in *Grable & Sons*, resolution of the issue was "dispositive of the case").

Third, the Notice of Ruling alleges that "[a] federal forum is needed to determine the nexus between the medications' disclosures concerning the circumstances of use in an out-patient setting and the suffocating confinement that Ms. Spears endures at the hands of her conservator."  Notice of Removal, ¶ 10.  As stated above, medications are not an issue in the Conservatorship Proceedings. Furthermore, *Grable & Sons* states this factor in terms of the Government's "direct interest in the availability of a federal forum to vindicate its own administrative action."  *Grable & Sons*, 545 U.S. at 315.  The Notice of Removal does not identify any "administrative action" taken by the Government with regard to the medications' disclosures, much less any action taken by the Government to allow the use of such medications ***only*** in an out-patient setting.  Furthermore, the Notice of Removal alleges that "[p]harmaceutical labeling is inherently circumstantial in nature; for the medication to realize its full effect, the circumstances of [Britney's] existence must be taken into consideration by the court."  Notice of Removal, ¶ 10. The Supreme Court has recognized that *Grable & Sons* may apply where there is "a nearly 'pure issue of law,'" but not to a claim that, as conceded by the Notice of Removal, "is fact-bound and situation-specific."  *Empire HealthChoice Assurance, Inc.*, 547 U.S. 677, 126 S. Ct. at 2137.  There is no question that this matter is both.

Fourth, the Notice of Removal argues that "the recurrence of this question would be rare due to Ms. Spears' unenviable status of having virtually no privacy in her life."  Notice of Removal, ¶ 11.  However, the alleged federal interest asserted in the Notice of Removal – an interest in not receiving medications – would exist in any case where the conservator was given medical powers (although not in this case,

where no such powers have been granted).  Because there is no logical relationship between Britney's fame and the alleged federal interest to be addressed, this question would recur frequently.

Finally, the Notice of Removal disregards the federalism concerns acknowledged by the *Grable & Sons* Court:

> But even when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto.  For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331. . . .  ***Because arising-under jurisdiction to hear a state-law claim always raises the possibility of upsetting the state-federal line drawn (or at least assumed) by Congress, the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction***. . . .

*Grable & Sons*, 545 U.S. at 313-14 (emphasis added).

Conservatorship proceedings are peculiarly creatures of state law.  They require the application of detailed statutory schemes enacted by state legislatures, and in-depth supervision of issues that often require immediate resolution.  In Cal. Prob. Code § 1800, the California Legislature sets forth the legislative intent underlying the conservatorship statutes.[7]  Conservatorship proceedings fall within the "domestic relations exception" to federal jurisdiction, *see Hemon v. Office of Public Guardian*, 878 F.2d 13, 14-15 (1st Cir. 1989) ("the federal interest in

---

[7]    Section 1800 provides that "[i]t is the intent of the Legislature in enacting this chapter to do the following:" "(a) [p]rotect the rights of persons who are placed under conservatorship;" "(b) [p]rovide that an assessment of the needs of the person is performed in order to determine the appropriateness and extent of a conservatorship and to set goals for increasing the conservatee's functional abilities to whatever extent possible;" "(c) [p]rovide that the health and psychosocial needs of the proposed conservatee are met;" "(d) [p]rovide that community-based services are used to the greatest extent in order to allow the conservatee to remain as independent and in the least restrictive setting as possible;" "(e) [p]rovide that the periodic review of the conservatorship by the court investigator shall consider the best interests of the conservatee;" "(f) [e]nsure that the conservatee's basic needs for physical health, food, clothing, and shelter are met;" and "(g) [p]rovide for the proper management and protection of the conservatee's real and personal property." Cal. Prob. Code § 1800.

18

1   guardianship matters is no more substantial than the very weak federal interest in

2   child custody matters found insufficient . . . to justify federal habeas jurisdiction") –

3   a jurisdictional exception akin to the "probate exception" elaborated upon in

4   *Marshall v. Marshall*, 547 U.S. 293 (2006).[8]

5          In short, the assertion of federal jurisdiction over the Conservatorship

6   Proceedings would gravely disrupt the well-established state law scheme that gives

7   exclusive jurisdiction over conservatorship matters not just to state courts, but,

8   within Los Angeles County, to the specialized Probate Court.  Federal district courts

9   lack the time, expertise, and manpower to supervise conservatorships, especially a

10  complex conservatorship like this one in which multiple applications and motions

11  have required immediate attention from the Probate Court.  There is no sign

12  whatsoever that Congress intended federal courts to deal with such issues.  Thus,

13  under the federalism concern acknowledged by *Grable & Sons*, it would be

14  inappropriate for the Court to find federal question jurisdiction over the

15  Conservatorship Proceedings even if the other factors identified in *Grable & Sons*

16  were present (which they are not).

17          **2.     The Notice of Removal's Miscellaneous Allegations do Not**
18                 **Demonstrate Federal Question Jurisdiction.**

19          The Notice of Removal includes a number of other allegations, without

20  making any attempt to explain how they demonstrate federal question jurisdiction.

21  *See* Notice of Removal, ¶¶ 2-4.  The Notice of Removal's failure to link these

22  allegations to federal question jurisdiction, taken alone, justifies remand.  In any

23

24

25

26  _____

    [8]    Because the Ninth Circuit recently held that the domestic relations exception
    bars federal jurisdiction only based on diversity, but not a federal question, *see*
27  *Atwood v. Fort Peck Tribal Counsel*, ___ F.3d ___, 2008 WL 161347 at *2-3 (9th Cir.
    Jan. 18 2008) – not to federal question jurisdiction – Mr. Spears is not arguing that
28  the domestic relations exception, by itself, precluded removal.

1   event, the Notice of Removal's allegations are unsupported by the record before the

2   Court for purposes of removal.[9]

3       First, the Notice of Removal asserts that "Ms. Spears has not received the

4   benefit of a single hearing before the court; yet she has been stripped of her right to

5   access counsel of her choosing and to meet with her counsel in a private meeting."

6   Notice of Removal, ¶ 2.  In point of fact, the Probate Court has held several hearings

7   at which Britney has been represented by her Court-appointed counsel, Mr. Ingham,

8   and she has had the right to attend those hearings and to meet with Mr. Ingham

9   privately.  The Probate Court has not barred Britney from meeting with counsel

10  other than Mr. Ingham.[10]

11      Second, the Notice of Removal asserts that Britney: (1) "has been denied the

12  right to associate freely with her friends"; (2) "has been denied the right to make or

13  receive telephone calls"; (3) "has been denied the right to operate a motor vehicle

14  and must be accompanied by security guards when in public"; and (4) "has been

15  denied the right to receive and send mail."  Notice of Removal, ¶ 3.  These alleged

16  facts do not appear on the face of the Temporary Petitions.  The February 6, 2008

17  Orders and Letters give Mr. Spears "the power to restrict and limit visitors by any

18  means" and "to retain security guards for [Britney] on a 24 hour/7 day basis," but do

19  not impose the other limitations alleged in the Notice of Removal.  *See* RJN, Exs.

20  LL-OO.

21      Third, the Notice of Removal states that Britney "has been denied the right to

22  her finances" and that "she is not allowed to access her money or her credit cards."

23  Notice of Removal, ¶ 4.  Restrictions on spending powers are inherent in a

24  _____

25  [9]    Many of the allegations included in the Notice of Removal are factually
    incorrect.  Because the allegations cannot support removal unless set forth in a

26  pleading, Mr. Spears will not burden the Court by providing a factual response to
    such allegations.

27  [10]    However, the Probate Court provided that any such meetings with counsel are
    subject to Mr. Spears' approval and that he may be present at those meetings – a

28  safeguard it deemed necessary based upon its preliminary findings.

conservatorship over the estate.  They do not create federal question jurisdiction.  If they did, every conservatorship over the estate would be subject to federal question jurisdiction.

Fourth, the Notice of Removal asserts that, with regard to Britney's family law proceedings concerning the custody of her children, "[i]t is doubtful that Ms. Spears can receive equal protection and a fair trial or hearing in the custody proceedings because of the intense media scrutiny of what would normally be private aspects of a person's life."[11]  *Id.*, ¶ 13.  The Notice of Removal asserts that Mr. Spears is denying Britney "the ability to participate effectively in the ongoing custody litigation."  *Id.*, ¶ 14.  This argument assumes that Britney has the capacity to participate effectively in the custody proceedings – the very issue of capacity that was to be resolved by the Probate Court.  If, as the Probate Court has preliminarily concluded, Britney herself lacks the capacity to direct counsel herself, the conservatorship of the person is necessary in order to protect her interests in the family law proceedings.

Finally, the Notice of Removal vaguely states that "due to the nature of the implementation of the conservatorship, Ms. Spears may be entitled to relief pursuant to 42 U.S.C. § 1983, et seq."  Notice of Removal, ¶ 12.  However, Britney could not pursue a Section 1983 claim against Mr. Spears because conservators "function[] as agents of the court and have absolute quasi-judicial immunity for those activities integrally related to the judicial process."  *See Cok v. Cosentino*, 876 F.2d 1, 3 (1st Cir. 1989).  In any event, a Section 1983 claim by Britney does not appear on the face of the conservatorship petitions, and therefore could not support removal.

---

[11]  Since the family law matter will be resolved by a Commissioner rather than a jury, the Notice of Removal's allegations concerning the effect of publicity on Britney's ability to receive a fair trial appear to be unfounded.

1   **III.   THE COURT SHOULD AWARD MR. SPEARS HIS COSTS AND
2           ATTORNEYS' FEES INCURRED AS A RESULT OF THE
           REMOVAL.**

3          By statute, an Order remanding a case to state court may require payment of

4   costs and attorneys' fees incurred as a result of the removal.  *See* 28 U.S.C.

5   § 1447(c).  "Absent unusual circumstances, courts may award attorney's fees under

6   § 1447(c) only where the removing party lacked an objectively reasonable basis for

7   seeking removal."  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  "In

8   applying this rule, district courts retain jurisdiction to consider whether unusual

9   circumstances warrant a departure from the rule in a given case."  *Id.*  In this case,

10  both grounds justify an award of attorneys' fees and costs.

11         First, Mr. Eardley lacked an objectively reasonable basis for purporting to

12  remove the Conservatorship Proceedings to this Court.  As an initial matter, had Mr.

13  Eardley made the objectively reasonable inquiry required by Fed. R. Civ. P. 11 as

14  specifically referenced in 28 U.S.C. § 1446(a), he would have known of the Probate

15  Court's publicly filed Orders that Britney lacks the capacity to hire counsel and

16  setting forth the procedures to be followed by counsel in order to meet with

17  Britney.[12]  Nevertheless, Mr. Eardley has purported to act on behalf of Britney by

18  filing a Notice of Removal.

19         Furthermore, under long-established law, there is no federal question

20  jurisdiction unless an issue of federal law appears on the face of a well-pleaded

21  complaint.  Here, there is no objectively reasonable basis for the Notice of

22  Removal's allegations that attempt to circumvent this rule by referring to matters

23  that, at best, suggest that issues of federal law might be implicated by the manner in

24  which the conservatorship is being administered.  Furthermore, the Notice of

25  Removal's allegation that Mr. Spears is "supplementing" Britney's medications –

26  _____

27  [12]    Given the widespread publicity given to that Order by the media and Mr.
       Eardley's decision to inject himself into this matter, it is incomprehensible that Mr.
28     Eardley could have lacked actual knowledge of the terms of that Order.

the primary ground presented in the Notice of Removal for finding federal question jurisdiction – disregards the fact – apparent on the face of the Probate Court's files – that the Probate Court did not grant Mr. Spears the power to make any medical or health care decisions for Britney; this allegation is inconsistent with Mr. Eardley's obligations under Rule 11.

Second, even if Mr. Eardley's actions were objectively reasonable – which they were not – "unusual circumstances" justify an award of costs and attorneys' fees in this case.  In particular, the timing of the Notice of Removal leads inexorably to the conclusion that it was filed for the purpose of derailing the Conservatorship Proceedings and, in particular, in an attempt to divest the Probate Court of jurisdiction to extend the conservatorship past February 14, 2008, with the intended result of the expiration of the conservatorship on that day.  If Mr. Eardley had filed the Notice of Removal with the Probate Court a half hour earlier on February 14, 2008, the Probate Court would have been unable to extend the conservatorship, and Mr. Spears would not have had enough time to seek relief from this Court to extend the conservatorship before it expired later that day.  This willful attempt to interfere with the Conservatorship Proceedings – which, if successful, could have resulted in dire consequences for Britney – justifies not only an award of attorneys' fees, but also far more severe sanctions.  *See*, *e.g.*, Cal. Bus. & Prof. Code § 6104 ("[c]orruptly or wilfully and without authority appearing as attorney to an action or proceeding constitutes a cause for disbarment or suspension").

This case presents "unusual circumstances" for another reason – two years earlier, this Court ordered Mr. Eardley to pay attorneys' fees and costs because he purported to remove a lawsuit to federal court on behalf of a defendant to a lawsuit even though he did not represent that defendant.  *See Ballon*, Case No. 05-6543 NM SSx) (Ex. A hereto).  Given his prior experience, Mr. Eardley should have been especially attuned to the impropriety of seeking to remove the Conservatorship

23

1  Proceedings where, by reason of the Probate Court's February 6 Orders, he could

2  not represent Britney.

3      As this Court observed when it awarded fees against Mr. Eardley in *Ballon*,

4  *see id.* at 5:1-6, Section 1441(c) authorizes an award of attorneys' fees against not

5  only parties but their attorneys.  *See State of Wisconsin v. Missionaries to the*

6  *Preborn*, 798 F. Supp. 542, 544 (E.D. Wis. 1992) (because Section 1447(c) does not

7  limit the parties against whom attorneys' fees and costs may be imposed, the court

8  has discretion "to impose costs and expenses against not only parties, but also

9  against their attorneys if the latter filed baseless papers or pleadings"); *Polanco v. 21*

10 *Arden Realty Corp.*, 121 B.R. 425, 427-28 (S.D.N.Y. 1990) (imposing sanctions

11 against attorneys under Section 1447(c)).

12     Because Britney is not actually being represented by Mr. Eardley, fees should

13 not be awarded against her.  Instead, Mr. Spears respectfully asks the Court to award

14 attorneys' fees and costs jointly and severally against Mr. Eardley and the person or

15 persons with whom he has worked in concert to effectuate the removal.  Mr. Spears

16 further asks the Court to order Mr. Eardley to provide a full and complete statement,

17 under penalty of perjury, identifying all such person and stating each person's role

18 with regard to the Notice of Removal.

19     As of the time of filing of this motion, Mr. Spears has incurred attorneys' fees

20 and costs of more than $27,495 as a result of Mr. Eardley's purported removal of the

21 Conservatorship Proceedings, and expects to incur additional attorneys' fees and

22 costs of $1,575 in connection with any hearing on this motion.  *See* Declaration of

23 Jeffrey D. Wexler, ¶¶ 2-10.  Mr. Spears will provide a supplemental declaration

24 itemizing any additional attorneys' fees and costs that he incurs in connection with

25 his reply papers in support of this motion.

26                          **CONCLUSION**

27     For the reasons set forth herein, Mr. Spears respectfully asks the Court to

28 remand the Action to the Probate Department of the Los Angeles Superior Court

1  and to award him the attorneys' fees and costs he has incurred and will incur as a

2  result of the removal.

3  DATED: February 19, 2008          Respectfully submitted,

4                                    LUCE, FORWARD, HAMILTON &
                                      SCRIPPS LLP

5

6                                    By:    /s/ Jeffrey D. Wexler

7                                          Jeffrey D. Wexler
                                          Attorneys for James P. Spears,

8                                          Temporary Conservator of the Person
                                          and Temporary Co-Conservator of the
                                          Estate

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28