# EXHIBIT N

Geraldine A. Wyle (SBN 89735)
Jeryll S. Cohen (SBN 125392)
Jeffrey D. Wexler (SBN 132256)
Vivian Lee Thoreen (SBN 224162)
LUCE FORWARD HAMILTON & SCRIPPS LLP
601 South Figueroa, Suite 3900
Los Angeles, California 90017
Telephone:  (213) 892-4992
Facsimile:  (213) 892-7731

Attorneys for Applicant James P. Spears

FILED
LOS ANGELES SUPERIOR COURT

FEB 01 2008

JOHN A. CLARKE, CLERK
BY G. PEREZ, DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES, CENTRAL DISTRICT

In re the Conservatorship of the Person of:

BRITNEY JEAN SPEARS,

Proposed Conservatee.

CASE NO. BP 108870

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION TO SEAL RECORD RE CONSERVATORSHIP OF THE PERSON

Date: February 1, 2008
Time: 10:30 a.m
Department: 9

## INTRODUCTION

Applicant James P. Spears ("Applicant") has initiated these proceedings to appoint a conservator of the person for his daughter, Britney Jean Spears ("Britney"). By this application, Applicant respectfully asks the Court to seal the record of these proceedings to protect Britney's constitutionally protected privacy rights and safety as well as her prospects for a medical recovery.

The Court should seal the record of these proceedings because there is no First Amendment right of public access to proceedings brought by a conservator for the purpose of addressing the medical needs and personal care of a conservatee. Even if there were a First Amendment right of public access to conservatorship proceedings – which there is not – the right of public access may be overcome where there "exists an overriding interest that overcomes the

1

right of public access to the record." Cal. R. Court 2.550(d). *See NBC Subsidiary (KNBC-TV), Inc. v. Superior Court*, 20 Cal. 4th 1178 (1999). Britney's inalienable constitutional right to privacy constitutes such an overriding interest. In balancing the constitutional right of privacy against the right of access to court proceedings, the balance in this case must lie heavily on the side of privacy right protection.

There is no legitimate reason for the public to have access to information about Britney's capacity to make medical decisions, her condition, or her treatment. Information about Britney's condition and the conservatorship would fuel widespread publicity, as is evidenced by the media frenzy over her hospitalization on the morning of January 31, 2008. Publicity of this nature would be highly injurious to Britney's health and her prospects for recovery.

## FACTUAL BACKGROUND

Because facts concerning Britney's medical condition are set forth in the Petition for Conservatorship and the declarations filed in support thereof, Applicant will not burden the Court by repeating all of such facts here.

These proceedings were initiated because Britney is unable to care for herself and in particular, her medical needs. Britney is currently in severe mental distress. As is more fully discussed in the Confidential Supplemental Information, it is believed that Britney suffers from several mental health disorders which are not being treated and which Britney does not have the capacity to treat. The purpose of the Petition is to obtain the power to get Britney effective medical treatment, including mental health treatment.

A google search for Conservatee's name yields 82,900,000 hits. Any news about the proposed Conservatee generates a media frenzy. She is constantly swarmed by photographers. They vie for news and photographs of her. Photographs and personal information, particular information of a highly confidential nature (such as her medical records) can potentially reap thousands if not millions of dollars. The possibility of such enormous profits presents a substantial risk that Britney's most confidential medical and personal information will be disclosed (for example, incredibly, the 5150 report has been leaked to the media virtually

verbatim). Because original documents carry a premium, there is also a substantial risk to the security of he Court file.

Further, as discussed at length in the declaration of Lynne Spears, Britney's mother, the Conservatee is currently subject to the influence of Osami Lutfi. Mr. Lutfi has been exerting total control over Britney's life, home, and finances. *See* Declaration of Lynne Spears, ¶¶ 2-20. Mr. Lutfi has disabled Britney's cars and has disconnected her home telephone line and disposed of the chargers for her cell phones. *See id.*, ¶¶ 3, 7, 11, 14. He has been putting crushed pills into Britney's food. *See id.*, ¶ 8. He has admitted paparazzi into Britney's home. *See id.*, ¶¶ 3, 5.

On the evening of January 29, 2008, Mr. Lutfi told Lynne Spears that "You'd better learn that I control everything." *Id.*, ¶ 9. Mr. Lutfi told her that he controlled Britney's business manager Howard Grossman, her attorneys, and the security guards at the gate. *See id.* He told Lynne Spears that if he weren't in the house to give Britney her medication she would kill herself, and that, if Lynne Spears tried to get rid of him, Britney will "be dead and I'll piss on her grave." *Id.*, ¶ 10.

## LEGAL ARGUMENT

### I. THERE IS NO CONSTITUTIONAL RIGHT OF PUBLIC ACCESS TO CONSERVATORSHIP PROCEEDINGS.

In *NBC Subsidiary (KNBC-TV), Inc.*, 20 Cal. 4th at 1212 & n.30, the California Supreme Court held that "in general, the First Amendment provides a right of access to ordinary civil trials and proceedings," but it acknowledged that its opinion "address[ed] . . . the right of access to ordinary civil proceedings in general, and not any right of access to particular proceedings governed by specific statutes." *Id.*

*NBC Subsidiary* recognized that, as a matter of United States Supreme Court authority, the determination whether "proceedings are sufficiently different from 'ordinary civil trials and proceedings' to justify a different conclusion on the right of access" requires consideration of whether open proceedings (1) are supported by historical tradition and (2) would promote utilitarian considerations. *In re Marriage of Burkle*, 135 Cal. App. 4th 1045, 1054-57 (2006).

Put otherwise, "[i]n determining whether the constitutional right of access attaches to a particular proceeding, the United States Supreme Court has set forth two related considerations: first, whether the place and process historically have been open to the public and, second, whether public access plays a significant positive role in the particular process." *People v. Dixon*, 148 Cal. App. 4th 414, 425 (2007) (citing *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986) ("*Press-Enterprise II*")). Consideration of these two factors demonstrates that there is no First Amendment right of public access to the conservatorship proceedings at issue in this case.

This is a proceeding brought under Cal. Prob. Code § 1820 for the appointment of a conservator of the person because the proposed conservatee – Britney – is unable to provide for certain of her needs. This proceeding involves a determination relating to mental health and medical conditions and treatments, which are very personal and confidential matters, with a long history of constitutional protection.

Furthermore, the legislative history to Cal. Prob. Code § 2357, the statute authorizing the Court to order that a conservator has the authority to consent on behalf of the conservatee to certain medical treatment, indicates that there is no "historical tradition" of public access to such proceedings. The Law Revision Commission Comment to the 1990 Enactment of Section 2357 states that "Section 2357 serves the same purpose as Section 5358.2 of the Welfare and Institutions Code (Lanterman-Petris-Short Act)." *Id.* Because there is no right of public access to proceedings under the Lanterman-Petris-Short Act, *see Dixon*, 148 Cal. App. 4th at 427 (noting that by statute, civil commitment proceedings under the Lanterman-Petris-Short Act are private unless the parties request otherwise) (discussing Cal. Welf. & Inst. Code § 5118)), it follows that there is no historical right of access to the same sort of proceedings when brought pursuant to the conservatorship statutes.

Turning to the second factor, public access would undermine the goal OF proceedings brought by a conservator to obtain court-ordered medical treatment. As the *Dixon* court recently noted in the context of a civil commitment proceeding brought pursuant to the Sexually Violent Predators Act (the "SVPA"), Cal. Welf. & Inst. Code §§ 6600 *et seq.*:

> . . . [I]nvoluntary civil commitment proceedings typically are closed proceedings. ***Because such proceedings are aimed at determining the status of a person's***

4

MEMO. OF Ps & As IN SUPPORT OF APPLICATION TO SEAL RECORD

> *mental health, they involve primarily personal and confidential matters.* As with juvenile dependency proceedings, while *openness* would expose any deficiencies and allow for improvements in the process, it *would seriously undermine the goals involved in these cases.*

*Dixon*, 148 Cal. App. 4th at 427-28 (emphasis added).

The Court in *Dixon* noted that there is no right to attend juvenile dependency proceedings. Based upon this same analysis, the *Dixon* court found that "[t]he two considerations . . . set forth in *Press-Enterprise II* . . . appear to weigh against extending the public right of access to involuntary civil commitment proceedings." *Id.* at 428. The *Dixon* court further noted that "the court cannot serve as a conduit through which confidential information is transmitted to other members of the public," and that "confidential reports . . . used during civil commitment proceedings . . . nonetheless retain their confidential nature and should not be made available to the public." *Id.* at 429.

Although the *Dixon* court recognized that there is "a compelling basis for arguing that involuntary civil commitment proceedings under the SVPA are not ordinary civil proceedings that must be open to the public," it declined to require absolute closure in cases involving civil commitment absent specific statutory authority because: (1) "[o]ur Supreme Court has made it clear that courts should attempt to safeguard the defendant's rights through less restrictive means rather than completely barring public access"; (2) "while civil commitment proceedings involve a determination of the defendant's mental health, the case also involves the defendant's past convictions, which are a matter of public concern and the records of which already are available to the public"; and (3) "a sexually violent predator has a lesser expectation of privacy in his psychological records." *Id.* at 430.

Here, in contrast to *Dixon,* there is no need to defer to the Legislature for a determination whether there is a right of public access to proceedings brought by a conservator for the purpose of addressing the medical and personal care needs of a conservatee. Denial of public access is supported by not only historical factors – the historical lack of public access to such proceedings, which are wholly statutory in nature – but by the fact that such access would impede the willingness of the conservator and the medical professionals to provide the personal and confidential information concerning the conservatee's mental and physical health that the Court

needs in order to make an informed decision. Furthermore, unlike in *Dixon*: (1) a conservatee's medical information is not a matter of public concern and has not previously been disclosed to the public; and (2) a conservatee – unlike a sexually violent predator – has a full expectation of privacy with respect to his or her mental and physical health and medical records.

For these reasons, the Court should find that there is no First Amendment right of public access to proceedings brought by a conservator to obtain court-ordered medical treatment for a conservatee, and it therefore should seal these proceedings without the need to consider the factors set forth in Cal. R. Court 2.550.

## II. THE COURT SHOULD SEAL THE RECORD OF THESE PROCEEDINGS IN ORDER TO PROTECT BRITNEY'S OVERRIDING INTERESTS IN PRIVACY AND SAFETY AND HER ABILITY TO RECEIVE REQUIRED EFFECTIVE MEDICAL TREATMENT.

Assuming *arguendo* that the public has a First Amendment right of access to conservatorship proceedings – which it does not – this motion to seal would be subject to the standard and procedures set forth in Cal. R. Court 2.550 and 2.551.[1] Under Cal. R. Court 2.550(d), which is based on the standards enunciated by the Supreme Court in *NBC Subsidiary (KNBC-TV), Inc.*, 20 Cal. 4th 1178, a court may seal the record "if it expressly finds facts that establish":

>     (1)    There exists an overriding interest that overcomes the right of public access to the record;
>
>     (2)    The overriding interest supports sealing the record;
>
>     (3)    A substantial probability exists that the overriding interest will be prejudiced if the record is not sealed;
>
>     (4)    The proposed sealing is narrowly tailored; and
>
>     (5)    No less restrictive means exist to achieve the overriding interest.

*Id.* *See* Advisory Committee Comment to Cal. R. Court 2.550 ("[c]ourts have found that, under appropriate circumstances, various statutory privileges, trade secrets, and privacy interests, when properly asserted and not waived, may constitute 'overriding interests'").

---

[1] Prior to January 1, 2007, these standards and procedures were designated as Cal. R. Court 243.1 and 243.2, respectively.
6
MEMO. OF Ps & As IN SUPPORT OF APPLICATION TO SEAL RECORD

All five factors are present here.

### A. There Exists Overriding Interests that Overcome the Right of Public Access to the Record.

Here, Britney has three overriding interests, any of which, by itself, is sufficient to support the sealing of these proceedings: (1) Britney's right of privacy with regard to her capacity to make medical decisions, her medical condition, and her treatment; (2) the potential danger to Britney that would be posed by the release of information concerning the conservatorship; and (3) the detrimental effect that public disclosure of such information is likely to have on Britney's treatment. *See* Cal. R. Court 2.550(d)(1).

#### 1. Sealing is Necessary to Protect Britney's Right of Privacy.

The California Constitution guarantees Britney a right of privacy. *See* Cal Const., Art. 1, § 1 ("All people are by nature free and independent and have inalienable rights. Among these are . . . pursuing and obtaining safety, happiness and privacy."). "A person's medical history undoubtedly falls within the recognized zones of privacy." *Johnson v. Superior Court*, 80 Cal. App. 4th 1050, 1068 (2000). *See, e.g., Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 656 (1975) (the "right of privacy extends to . . . the details of one's personal life"); *Pettus v. Cole*, 49 Cal. App. 4th 402, 440-41 (1996) ("[i]t is well settled that the zone of privacy created by [the California Constitution] extend[s] to the details of a patient's medical and psychiatric history"); *Board of Medical Quality Assurance v. Gherardini*, 93 Cal. App. 3d 669, 678 (1979) ("[a] person's medical profile is an area of privacy infinitely more intimate, more personal in quality and nature than many areas already judicially recognized and protected").

For purposes of the sealing analysis, the courts recognize that "in appropriate circumstances, the right to privacy may be properly described as a compelling or overriding interest." *Burkle*, 135 Cal. App. 4th at 1063. In order to protect the right of privacy, "it is appropriate to seal certain records when those particular records contain highly sensitive and potentially embarrassing personal information about individuals." *People v. Jackson*, 128 Cal. App. 4th 1009, 1024 (2005).

Britney's right to maintain in confidence her medical information is also protected under the Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56 *et seq.*[2] While that Act imposes disclosure restrictions only on health care providers, *see* Cal. Civ. Code § 56.10(a), the Act's privacy protections are relevant to the Court's determination as to seal these proceedings under the doctrine that (1) "the court cannot serve as a conduit through which confidential information is transmitted to other members of the public" and (2) "confidential reports . . . used during civil commitment proceedings . . . nonetheless retain their confidential nature and should not be made available to the public," *Dixon*, 148 Cal. App. 4th at 429.

### 2. Sealing is Necessary to Protect Britney's Safety.

As the facts set forth above and spelled out in more detail in the declaration of Lynne Spears demonstrate, there is a real possibility that Mr. Lutfi may pose a danger to Britney. The release of information concerning the conservatorship over Britney – and, in particular, the detailed and specific allegations concerning Mr. Lutfi's conduct with regard to Britney, as well as the psychological issues relating to his influence over her – would increase the likelihood that Mr. Lutfi will act violently against Britney or those associated with her.

### 3. Sealing is Necessary to Protect Britney's Interest in Medical Treatment.

The Court should seal these proceedings in order to protect Britney's overriding interest in receiving effective and necessary medical treatment. In *Estate of Hearst*, 67 Cal. App. 3d 777, 781, 784-85 (1977), the court recognized that the First Amendment right of public access must yield to a showing that disclosure of information would place individuals "in serious danger of loss of life or property." *See id.* (holding that a sealing order might be appropriate where disclosure of information concerning the location of homes and property of beneficiaries of the testamentary trust of William Randolph Hearst might expose the beneficiaries to the risk of terrorist attack).

---

[2] Britney's privacy interests in information concerning her medical condition and treatment is further evidenced by the fact that under HIPAA, the Health Insurance Portability and Accountability Act of 1996, medical personnel are prohibited from releasing such information.

8

MEMO. OF Ps & As IN SUPPORT OF APPLICATION TO SEAL RECORD

As stated above, these proceedings have been initiated in order to obtain treatment for Britney's very serious mental health disorders. The effective treatment of mental health issues necessarily depends upon the subject's confidence in the confidentiality of her relationship with her care providers and treating physicians. Here, were the information towards which this motion to seal is directed to be made public, such information would certainly be disseminated widely by television and print media and over the Internet. Public disclosure of such information would be likely to harm the effectiveness of Britney's treatment.

### B. The Overriding Interests Support Sealing the Record.

A sealing order is necessary to protect all three of Britney's overriding interests. *See* Cal. R. Court 2.550(d)(2). First, Britney's overriding interest in privacy would be compromised by public disclosure of the records of – or the existence of – these proceedings. Second, Britney's overriding interest in safety would be threatened if Mr. Lutfi were to learn of these proceedings and the allegations made herein. Third, Britney's overriding interest in effective medical treatment would be impaired by public disclosure of her capacity to make medical decisions, her medical condition, and her treatment.

### C. There is a Substantial Probability that the Overriding Interests Will be Prejudiced if the Record is Not Sealed.

Given the large amount of past and current media attention given to Britney and her medical condition, there is far more than a substantial probability that her overriding interests will be prejudiced if the record is not sealed. *See* Cal. R. Court 2.550(d)(2), (3). It is virtually certain that, in the absence of a sealing order, Britney's capacity to make medical decisions, her medical condition, and her treatment conservatorship will receive widespread publicity, thereby destroying her right of privacy with regard to such matters and increasing the risk that Mr. Lutfi will act violently. There is also a substantial probability that such publicity will disrupt Britney's ability to receive effective medical treatment.

**D. The Proposed Sealing is as Narrowly Tailored as Possible, and No Less Restrictive Means Exist to Achieve the Overriding Interests.**

The proposed sealing is as narrowly tailored as possible, and no less restrictive means exist to achieve the overriding interest. *See* Cal. R. Court 2.550(d)(4), (5). For the reasons discussed above, Britney's interests in privacy, security, and obtaining effective medical treatment may be protected only by preventing public disclosure of the fact that a conservatorship proceeding has been commenced for her. Given the absence of any less restrictive alternative that would protect Britney's overriding interests, these proceedings must be sealed in their entirety.

## CONCLUSION

Applicant respectfully asks the Court to seal the record of Britney's conservatorship in its entirety.

DATED: February 1, 2008                    Respectfully submitted,

LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: /s/ Jeryll Cohen
    Jeryll S. Cohen
    Attorneys for Applicant James P. Spears