# EXHIBIT O

Geraldine A. Wyle (SBN 89735)
Jeryll S. Cohen (SBN 125392)
Jeffrey D. Wexler (SBN 132256)
Vivian Lee Thoreen (SBN 224162)
LUCE FORWARD HAMILTON & SCRIPPS LLP
601 South Figueroa, Suite 3900
Los Angeles, California 90017
Telephone: (213) 892-4992
Facsimile: (213) 892-7731

Attorneys for Applicant James P. Spears

**FILED**
LOS ANGELES SUPERIOR COURT

FEB 01 2008

JOHN A. CLARKE, CLERK
BY G. PEREZ, DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES, CENTRAL DISTRICT

In re the Conservatorship of the Person of:

BRITNEY JEAN SPEARS,

　　　　Proposed Conservatee.

CASE NO. BP BP108870

**NOTICE OF LODGING OF NON-CALIFORNIA AUTHORITY CITED IN SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION TO SEAL RECORD RE CONSERVATORSHIP OF THE PERSON**

Date: February 1, 2008
Time: 10:30 a.m
Department: 11

---

1
NOTICE OF LODGING OF NON-CA AUTH. CITED IN APPLICATION TO SEAL RECORD

Applicant Jamie Spears lodges the following non-California authority cited in his Supplemental Memorandum of Points and Authorities:

A    *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986)

DATED: February 1, 2008    Respectfully submitted,

LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: _____
Geraldine A. Wyle
Attorneys for Applicant James P. Spears

478 U.S. 1, *; 106 S. Ct. 2735, **;
92 L. Ed. 2d 1, ***; 1986 U.S. LEXIS 120

LEXSEE 478 US 1

PRESS-ENTERPRISE CO. v. SUPERIOR COURT OF CALIFORNIA FOR THE COUNTY OF RIVERSIDE

No. 84-1560

SUPREME COURT OF THE UNITED STATES

*478 U.S. 1; 106 S. Ct. 2735; 92 L. Ed. 2d 1; 1986 U.S. LEXIS 120; 54 U.S.L.W. 4869; 13 Media L. Rep. 1001*

February 26, 1986, Argued
June 30, 1986, Decided

**PRIOR HISTORY:** CERTIORARI TO THE SUPREME COURT OF CALIFORNIA.

**DISPOSITION:** *37 Cal. 3d 773, 691 P. 2d 1026,* reversed.

**DECISION:**

Qualified *First Amendment* right of public access held to attach to preliminary hearings in criminal cases as conducted in California.

**SUMMARY:**

Under the California penal code, an accused has an absolute right to a preliminary hearing before a neutral magistrate. The accused has the right to appear personally at the hearing, to be represented by counsel, to cross-examine hostile witnesses, to present exculpatory evidence, and to exclude illegally obtained evidence. If the magistrate determines that probable cause exists, the accused is bound over for trial. A nurse was charged by the state of California with murdering 12 patients by administering massive doses of a heart drug. A preliminary hearing commenced, and the accused moved to exclude the public under a California statute requiring such proceedings to be open unless exclusion of the public is necessary in order to protect the accused's right to a fair and impartial trial. The magistrate granted the motion, finding that closure was necessary because the case had attracted national publicity and that the media might report only one side of the case. At the conclusion of the 41-day hearing, a newspaper publisher asked that the transcript of the proceedings be released, but the magistrate refused and sealed the record. The state, later joined by the publisher, moved in California Superior Court to have the transcript released to the public, but the court, finding that there was a reasonable likelihood that release might prejudice the accused's right to a fair and impartial trial, ordered that the transcript remain sealed. The publisher then filed a peremptory writ of mandate with the California Court of Appeal, which ultimately denied the writ. Meanwhile, the accused waived his right to a jury trial and the Superior Court released the transcript. The California Supreme Court then denied the publisher's peremptory writ of mandate, holding (1) that there is no general *First Amendment* right of access to preliminary hearings, and (2) that under the California access statute, if the accused establishes a "reasonable likelihood of substantial prejudice," the burden shifts to the state or the media to show by a preponderance of the evidence that there is no such reasonable probability of prejudice (*37 Cal 3d 772, 691 P2d 1026*).

On certiorari, the United States Supreme Court reversed. In an opinion by Burger, Ch. J., joined by Brennan, White, Marshall, Blackmun, Powell, and O'Connor, JJ., it was held that (1) a qualified *First Amendment* right of public access attaches to preliminary hearings as they are conducted in California, since (a) there has been a tradition of accessibility to preliminary hearings of this type, and (b) public access to such hearings is essential to the proper functioning of the criminal justice system, (2) such hearings cannot be closed unless specific, on-the-record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest, (3) if the interest asserted is the right of the accused to a fair trial, a preliminary hearing can be closed only if specific findings are made demonstrating that (a) there is a substantial probability that the accused's right to a fair trial will be prejudiced by publicity that closure would prevent, and (b) reasonable alternatives to closure cannot

adequately protect the accused's fair trial rights, and (4) the standard applied by the California Supreme Court failed to consider the public's First Amendment right of access.

Stevens, J., joined by Rehnquist, J., as to (2) and (3), below, dissented, expressing the view that (1) the risk of prejudice to the accused's right to a fair trial in this case was more significant than the countervailing interest in publishing the transcript sooner rather than later, (2) the framers and ratifiers of the First Amendment could not have intended preliminary proceedings to remain open, and (3) the majority's reasoning based on the "value of openness" was defective because it applied with as much force to the traditionally secret grand jury.

**LAWYERS' EDITION HEADNOTES:**

[\*\*\*LEdHN1]

CONSTITUTIONAL LAW §944

TRIAL §2.5

First Amendment -- public access -- preliminary hearing --

Headnote:[1A][1B][1C]

A qualified First Amendment right of public access attaches to a preliminary hearing, growing out of a criminal prosecution, as it is conducted in California, in which by statute the accused has the right to appear personally, to be represented by counsel, to cross-examine hostile witnesses, to present exculpatory evidence, and to exclude illegally obtained evidence, and in which the accused is bound over for trial if the magistrate determines that probable cause exists, since (1) there has been a tradition of accessibility to preliminary hearings of this type, (2) such a hearing, because of its extensive scope, is often the final and most important step in the criminal proceeding and often provides the sole occasion for public observation of the criminal justice system, and (3) the absence of a jury makes the importance of public access even more significant; denying transcripts of such a hearing would frustrate the community therapeutic value of openness. (Stevens and Rehnquist, JJ., dissented from this holding.)

[\*\*\*LEdHN2]

CONSTITUTIONAL LAW §944

TRIAL §2.5

preliminary hearing -- closure --

Headnote:[2A][2B]

A preliminary hearing to which a qualified First Amendment right of public access attaches cannot be closed unless specific, on-the-record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest; if the interest asserted is the right of the accused to a fair trial, the preliminary hearing may be closed only if specific findings are made demonstrating that (1) there is a substantial probability that the accused's right to a fair trial will be prejudiced by publicity that closure would prevent, and (2) reasonable alternatives to closure cannot adequately protect the accused's fair trial rights.

[\*\*\*LEdHN3]

CONSTITUTIONAL LAW §944

TRIAL §2.5

preliminary hearing -- closure --

Headnote:[3A][3B]

A state court, interpreting a state statute that permits the closure of a preliminary hearing, of the kind to which a qualified First Amendment right of a public access attaches, if exclusion of the public is necessary in order to protect the accused's right to a fair and impartial trial, applies a standard that fails to consider the public's First Amendment right where (1) the court rules that the magistrate shall close the preliminary hearing upon finding a reasonable likelihood of substantial prejudice, since the "reasonable likelihood" test places a lesser burden on the accused than the "substantial probability" test that is called for by the First Amendment, and (2) the court fails to consider whether alternatives short of complete disclosure would protect the accused's interests.

[\*\*\*LEdHN4]

APPEAL §1662

mootness -- evading review -- trial closure --

Headnote:[4]

A newspaper publisher's challenge to a state court's initial refusal to release the transcript of a preliminary hearing in a criminal se is not moot, on certiorari to the United States Supreme Court, even though the transcript has already been released following the accused's waiver of a jury trial, where (1) it can reasonably be assumed that the publisher will be subjected to a similar closure order in the future, (2) such criminal proceedings are typically of short duration, and (3) the controversy is thus capable of repetition, yet evading review.

[***LEdHN5]

CONSTITUTIONAL LAW §944

CRIMINAL LAW §47.5

TRIAL §2.5

public trial --

Headnote:[5A][5B]

One of the important means of assuring a fair trial is that the process be open to neutral observers; the right to an open public trial is a shared right of the accused under the *Sixth Amendment* and the public under the *First Amendment*.

[***LEdHN6]

CRIMINAL LAW §47.5

TRIAL §2.5

suppression hearing --

Headnote:[6]

A suppression hearing must be open if the accused objects to its closure, unless the party seeking to close the hearing advances an overriding interest that is likely to be prejudiced.

[***LEdHN7]

CONSTITUTIONAL LAW §944

TRIAL §2.5

publicity -- preliminary hearing --

Headnote:[7]

It cannot properly be said that the public's *First Amendment* right to a public trial is not implicated in the case of a preliminary hearing on the ground that the proceeding is not a criminal trial; the *First Amendment* question cannot be resolved solely on the label given to the event, whether "trial" or otherwise, particularly where the preliminary hearing functions much like a full scale criminal trial.

[***LEdHN8]

GRAND JURY §4

secrecy --

Headnote:[8]

The proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.

[***LEdHN9]

CONSTITUTIONAL LAW §944

TRIAL §2.5

publicity --

Headnote:[9]

There are some limited circumstances in which the accused's right to a fair trial might be undermined by publicity; in such cases, the trial court must determine whether the situation is such that the rights of the accused override the qualified *First Amendment* right of access.

[***LEdHN10]

TRIAL §2.5

closure --

Headnote:[10A][10B]

The protection of victims of sex crimes from the trauma and embarrassment of public scrutiny may justify closing certain aspects of a criminal proceeding.

[***LEdHN11]

TRIAL §2.5

publicity -- suppression hearing --

Headnote:[11]

A risk of prejudice resulting from pretrial publicity does not automatically justify refusing public access to hearings on every motion to suppress, since a court can identify, through the process of voir dire, those jurors whose prior knowledge of the case would disable them from rendering an impartial verdict.

**SYLLABUS**

California filed a complaint against a nurse charging him with murdering 12 patients by administering massive doses of the heart drug lidocaine. The Magistrate granted the defendant's motion to exclude the public from the preliminary hearing on the complaint under a California statute that requires such proceedings to be open unless "exclusion of the public is necessary in order to protect the defendant's right to a fair and impartial trial." At the conclusion of the 41-day preliminary hearing, the Magistrate refused petitioner's request that the transcript of the proceedings be released. Thereafter, the State, supported by petitioner and opposed by the defendant, moved unsuccessfully in the

California Superior Court to have the transcript released. Petitioner then filed a peremptory writ of mandate with the California Court of Appeal. Meanwhile, the defendant waived his right to a jury trial, and the Superior Court released the transcript. After holding that the controversy was not moot, the Court of Appeal denied the writ. The California Supreme Court also denied the writ, holding that there is no general *First Amendment* right of access to preliminary hearings, and that under the California statute if the defendant establishes a "reasonable likelihood of substantial prejudice," the burden shifts to the prosecution or the media to show by a preponderance of the evidence that there is no such reasonable probability of prejudice.

*Held*:

1. Even though the Superior Court ultimately released the transcript in question, the case is not moot because the controversy is "capable of repetition, yet evading review." *Globe Newspaper Co. v. Superior Court, 457 U.S. 596; Gannett Co. v. DePasquale, 443 U.S. 368.* Thus, this Court has jurisdiction. P. 6.

2. The qualified *First Amendment* right of access to criminal proceedings applies to preliminary hearings as conducted in California. First, there has been a tradition of public accessibility to preliminary hearings of the type conducted in California. As opposed to grand jury proceedings, preliminary hearings conducted before neutral and detached magistrates have been open to the public. Second, public access to such preliminary hearings is essential to the proper functioning of the criminal justice system. This proper functioning is not made any less essential by the fact that a preliminary hearing cannot result in a conviction and the adjudication is before a magistrate without a jury. The absence of a jury makes the importance of public access even more significant. Pp. 6-13.

3. Since a qualified *First Amendment* right of access attaches to preliminary hearings as conducted in California, the proceedings cannot be closed unless specific, on the record findings are made demonstrating that "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 510.* If the interest asserted is the defendant's right to a fair trial, the preliminary hearing shall not be closed unless there is a "substantial probability" that that right will be prejudiced by publicity that closure would prevent and that reasonable alternatives to closure cannot adequately protect the right. Here, the "reasonable likelihood" test applied by the California Supreme Court placed a lesser burden on the defendant than the "substantial probability" test required by the *First Amendment.* Moreover, the court failed to consider whether alternatives short of closure would have protected the defendant's interests. Pp. 13-15.

**COUNSEL:** James D. Ward argued the cause for petitioner. With him on the briefs was Sharon J. Waters.

Joyce Ellen Manulis Reikes argued the cause for respondent. With her on the brief were Gerald J. Geerlings and Glenn Robert Salter. Ephriam Margolin filed a brief for Diaz, real party in interest. *

> \* Briefs of amici curiae urging reversal were filed for the State of California by John K. Van de Kamp, Attorney General, Andrea Sheridan Ordin and Steve White, Chief Assistant Attorneys General, and Marian M. Johnston, Deputy Attorney General; for the American Civil Liberties Union et al. by Robert S. Warren, Rex S. Heinke, and Charles S. Sims; for the American Newspaper Publishers Association et al. by Bruce W. Sanford, Lee Levine, W. Terry Maguire, Richard M. Schmidt, Jr., George A. Vradenburg III, Lawrence Gunnels, Mark L. Tuft, Robert D. Sack, Alice Neff Lucan, E. Susan Garsh, Harvey L. Lipton, Norton L. Armour, Robert J. Brinkmann, Lois J. Schiffer, Samuel E. Klein, Nancy H. Hendry, Jane E. Kirtley, Alexander Wellford, P. Cameron De Vore, and Carol D. Melamed; and for Copley Press, Inc., et al. by Harold W. Fuson, Jr., Judith R. Epstein, Edward J. McIntyre, William A. Niese, Donald L. Zachary, Mark L. Tuft, Lawrence Gunnels, Robert N. Landes, Kenneth M. Vittor, and Jonathan Kotler.
>
> Grover C. Trask II, pro se, filed a brief for the District Attorney, County of Riverside, as amicus curiae.

**JUDGES:** BURGER, C. J., delivered the opinion of the Court, in which BRENNAN, WHITE, MARSHALL, BLACKMUN, POWELL, and O'CONNOR, JJ., joined. STEVENS, J., filed a dissenting opinion, in Part II of which REHNQUIST, J., joined, post, p. 15.

**OPINION BY:** BURGER

**OPINION**

[*3] [***7] [**2737] CHIEF JUSTICE

BURGER delivered the opinion of the Court.

[***LEdHR1A] [1A] [***LEdHR2A] [2A] [***LEdHR3A] [3A] We granted certiorari to decide whether petitioner has a *First Amendment* right of access to the transcript of a preliminary hearing growing out of a criminal prosecution.

I

On December 23, 1981, the State of California filed a complaint in the Riverside County Municipal Court, charging Robert Diaz with 12 counts of murder and seeking the death penalty. The complaint alleged that Diaz, a nurse, murdered 12 patients by [**2738] administering massive doses of the heart drug lidocaine. The preliminary hearing on the complaint commenced on July 6, 1982. Diaz moved to exclude the public from the proceedings under *Cal. Penal Code Ann. § 868* (West 1985), which requires such proceedings to be [*4] open unless "exclusion of the public is necessary in order to protect the defendant's right to a fair and impartial trial."[1] The Magistrate granted the unopposed motion, finding that closure was necessary because the case had attracted national publicity and "only one side may get reported in the media." App. 22a.

  1 *Section 868*, as amended in 1982, provides in full:

  "The examination shall be open and public. However, upon the request of the defendant and a finding by the magistrate that exclusion of the public is necessary in order to protect the defendant's right to a fair and impartial trial, the magistrate shall exclude from the examination every person except the clerk, court reporter and bailiff, the prosecutor and his or her counsel, the Attorney General, the district attorney of the county, the investigating officer, the officer having custody of a prisoner witness while the witness is testifying, the defendant and his or her counsel, the officer having the defendant in custody and a person chosen by the prosecuting witness who is not himself or herself a witness but who is present to provide the prosecuting witness moral support, provided that the person so chosen shall not discuss prior to or during the preliminary examination the testimony of the prosecuting witness with any person, other than the prosecuting witness, who is a witness in the examination. Nothing in this section shall affect the right to exclude witnesses as provided in Section 687 of the Penal Code."

Before 1982, the statute gave the defendant the unqualified right to close the proceedings. After the California Supreme Court rejected a *First Amendment* attack on the old statute in *San Jose Mercury-News v. Superior Court, 30 Cal. 3d 498, 638 P. 2d 655 (1982)*, the California Legislature amended the statute to include the present requirement that the hearing be closed only upon a finding by the magistrate that closure is "necessary in order to protect the defendant's right to a fair and impartial trial."

The preliminary hearing continued for 41 days. Most of the testimony and the evidence presented by the State was medical and scientific; the remainder consisted of testimony by personnel who worked with Diaz on the shifts when the 12 patients died. Diaz did not introduce any evidence, but his counsel subjected most of the witnesses to vigorous crossexamination. Diaz was held to [***8] answer on all charges. At the conclusion of the hearing, petitioner Press-Enterprise [*5] Company asked that the transcript of the proceedings be released. The Magistrate refused and sealed the record.

On January 21, 1983, the State moved in Superior Court to have the transcript of the preliminary hearing released to the public; petitioner later joined in support of the motion. Diaz opposed the motion, contending that release of the transcript would result in prejudicial pretrial publicity. The Superior Court found that the information in the transcript was "as factual as it could be," and that the facts were neither "inflammatory" nor "exciting," but that there was, nonetheless, "a reasonable likelihood that release of all or any part of the transcripts might prejudice defendant's right to a fair and impartial trial." *Id.*, at 60a, 61a.

Petitioner then filed a peremptory writ of mandate with the Court of Appeal. That court originally denied the writ but, after being so ordered by the California Supreme Court, set the matter for a hearing. Meanwhile, Diaz waived his right to a jury trial and the Superior Court released the transcript. After holding that the controversy was not moot, the Court of Appeal denied the writ of mandate.

The California Supreme Court thereafter denied petitioner's peremptory writ of mandate, holding that there is no general *First Amendment* right of access to preliminary hearings. *37 Cal. 3d 772, 691 P. 2d 1026 (1984)*. The court reasoned that the right of access to criminal proceedings recognized in *Press-Enterprise Co. v. Superior Court, 464 U.S. 501 (1984) (Press-Enterprise I)*, and *Globe Newspaper Co. v. Superior*

Court, 457 U.S. 596 (1982), extended only to actual criminal trials. 37 Cal. 3d, at 776, 691 P. 2d, at 1028. [**2739] Furthermore, the reasons that had been asserted for closing the proceedings in *Press-Enterprise I* and *Globe* -- the interests of witnesses and other third parties -- were not the same as the right asserted in this case -- the defendant's right to a fair and impartial trial by a jury uninfluenced by news accounts.

Having found no general *First Amendment* right of access, the court then considered the circumstances in which the closure [*6] would be proper under the California access statute, *Cal. Penal Code Ann. § 868* (West 1985). Under the statute, the court reasoned, if the defendant establishes a "reasonable likelihood of substantial prejudice" the burden shifts to the prosecution or the media to show by a preponderance of the evidence that there is no such reasonable probability of prejudice. 37 Cal. 3d, at 782, 691 P. 2d, at 1032.

We granted certiorari. 474 U.S. 899 (1985). We reverse.

II

[***LEdHR4] [4]We must first consider whether we have jurisdiction under Article III, § 2, of the Constitution. In this Court, petitioner challenges the Superior Court's original refusal to release the transcript of the preliminary hearing. As noted above, the specific relief petitioner seeks has already been granted -- the transcript of the preliminary hearing was released after Diaz waived his right to a jury trial. However, as in *Globe Newspaper, supra*, at 603, [***9] and *Gannett Co. v. DePasquale*, 443 U.S. 368, 377-378 (1979), this controversy is "'capable of repetition, yet evading review.'" It can reasonably be assumed that petitioner will be subjected to a similar closure order and, because criminal proceedings are typically of short duration, such an order will likely evade review. *Globe* and *Gannett*, therefore, require the conclusion that this case is not moot. Accordingly, we turn to the merits.

III

It is important to identify precisely what the California Supreme Court decided:

"[We] conclude that the magistrate shall close the preliminary hearing upon finding a reasonable likelihood of substantial prejudice which would impinge upon the right to a fair trial. Penal code *section 868* makes clear that the primary right is the right to a fair trial and that the public's right of access must give way when there is conflict." 37 Cal. 3d, at 781, 691 P. 2d, at 1032.

[*7] [***LEdHR5A] [5A]It is difficult to disagree in the abstract with that court's analysis balancing the defendant's right to a fair trial against the public right of access. It is also important to remember that these interests are not necessarily inconsistent. Plainly, the defendant has a right to a fair trial but, as we have repeatedly recognized, one of the important means of assuring a fair trial is that the process be open to neutral observers.

[***LEdHR5B] [5B] [***LEdHR6] [6]The right to an open public trial is a shared right of the accused and the public, the common concern being the assurance of fairness. Only recently, in *Waller v. Georgia*, 467 U.S. 39 (1984), for example, we considered whether the defendant's *Sixth Amendment* right to an open trial prevented the closure of a suppression hearing over the defendant's objection. We noted that the *First Amendment* right of access would in most instances attach to such proceedings and that "the explicit *Sixth Amendment* right of the accused is no less protective of a public trial than the implicit *First Amendment* right of the press and public." *Id.*, at 46. When the defendant objects to the closure of a suppression hearing, therefore, the hearing must be open unless the party seeking to close the hearing advances an overriding interest that is likely to be prejudiced. *Id.*, at 47.

[**2740] [***LEdHR7] [7]Here, unlike *Waller*, the right asserted is not the defendant's *Sixth Amendment* right to a public trial since the defendant requested a *closed* preliminary hearing. Instead, the right asserted here is that of the public under the *First Amendment*. See *Gannett, supra*, at 397 (POWELL, J., concurring). The California Supreme Court concluded that the *First Amendment* was not implicated because the proceeding was not a criminal trial, but a preliminary hearing. However, the *First Amendment* question cannot be resolved solely on the label we give the event, *i. e.*, "trial" or otherwise, particularly where the preliminary hearing functions much like a full-scale trial.

[*8] In cases dealing with the claim of a *First Amendment* right of access to criminal proceedings, our decisions [***10] have emphasized two complementary considerations. First, because a "'tradition of accessibility implies the favorable judgment of experience,'" *Globe Newspaper*, 457 U.S., at 605 (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 589 (1980) (BRENNAN, J., concurring in judgment)), we have considered whether the place and process have historically been open to the press and general public.

In *Press-Enterprise I*, for example, we observed that "since the development of trial by jury, the process of selection of jurors has presumptively been a public process with exceptions only for good cause shown." *464 U.S., at 505*. In *Richmond Newspapers*, we reviewed some of the early history of England's open trials from the day when a trial was much like a "town meeting." In the days before the Norman Conquest, criminal cases were brought before "moots," a collection of the freemen in the community. The public trial, "one of the essential qualities of a court of justice" in England, was recognized early on in the Colonies. There were risks, of course, inherent in such a "town meeting" trial -- the risk that it might become a gathering moved by emotions or passions growing from the nature of a crime; a "lynch mob" ambience is hardly conducive to calm, reasoned decisionmaking based on evidence. Plainly the modern trial with jurors open to interrogation for possible bias is a far cry from the "town meeting trial" of ancient English practice. Yet even our modern procedural protections have their origin in the ancient common-law principle which provided, not for closed proceedings, but rather for rules of conduct for those who attend trials. *Richmond Newspapers, supra*, at 567.

[***LEdHR8] [8]Second, in this setting the Court has traditionally considered whether public access plays a significant positive role in the functioning of the particular process in question. *Globe Newspaper, supra, at 606*. Although many governmental processes operate best under public scrutiny, it takes little [*9] imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly. A classic example is that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 218 (1979)*. Other proceedings plainly require public access. In *Press-Enterprise I*, we summarized the holdings of prior cases, noting that openness in criminal trials, including the selection of jurors, "enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." *464 U.S., at 501*.

[***LEdHR9] [9] [***LEdHR10A] [10A]These considerations of experience and logic are, of course, related, for history and experience shape the functioning of governmental processes. If the particular proceeding in question passes these tests of experience and logic, a qualified *First Amendment* right of public access attaches. But even when a right of access attaches, it is not absolute. *Globe Newspaper Co. v.* [***11] *Superior Court, supra*, at 606. While open criminal [**2741] proceedings give assurances of fairness to both the public and the accused, there are some limited circumstances in which the right of the accused to a fair trial might be undermined by publicity. ² In such cases, the trial court must determine whether the situation is such that the rights of the accused override the qualified *First Amendment* right of access. In *Press-Enterprise I* we stated:

"[The] presumption may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can [*10] determine whether the closure order was properly entered." *464 U.S., at 510*.

[***LEdHR10B] [10B]

> 2 Similarly, the interests of those other than the accused may be implicated. The protection of victims of sex crimes from the trauma and embarrassment of public scrutiny may justify closing certain aspects of a criminal proceeding. See *Globe Newspaper Co. v. Superior Court, 457 U.S., at 607-610*.

IV

A

[***LEdHR1B] [1B]The considerations that led the Court to apply the *First Amendment* right of access to criminal trials in *Richmond Newspapers* and *Globe* and the selection of jurors in *Press-Enterprise I* lead us to conclude that the right of access applies to preliminary hearings as conducted in California.

First, there has been a tradition of accessibility to preliminary hearings of the type conducted in California. Although grand jury proceedings have traditionally been closed to the public and the accused, preliminary hearings conducted before neutral and detached magistrates have been open to the public. Long ago in the celebrated trial of Aaron Burr for treason, for example, with Chief Justice Marshall sitting as trial judge, the probable-cause hearing was held in the Hall of the House of Delegates in Virginia, the courtroom being too small to accommodate the crush of interested citizens. *United States v. Burr, 25 F. Cas. 1 (No. 14,692) (CC Va. 1807)*. From *Burr* until the present day, the near uniform practice of state and federal courts has been to conduct preliminary hearings in open court. ³ As

we noted [***12] in *Gannett*, [*11] several States following the original New York Field Code of Criminal Procedure published in 1850 have allowed preliminary hearings to be closed on the motion of the [**2742] accused. *443 U.S., at 390-391*. But even in these States the proceedings are presumptively open to the public and are closed only for cause shown. [4] Open preliminary hearings, therefore, have been accorded "'the favorable judgment of experience.'" *Globe, 457 U.S., at 605*.

3  The vast majority of States considering the issue have concluded that the same tradition of accessibility that applies to criminal trials applies to preliminary proceedings. See, *e. g., Arkansas Television Co. v. Tedder*, 281 Ark. 152, 662 S. W. 2d 174 (1983); *Miami Herald Publishing Co. v. Lewis*, 426 So. 2d 1 (Fla. 1982); *R. W. Page Corp. v. Lumpkin*, 249 Ga. 576, 578-579, 292 S. E. 2d 815, 819 (1982); *Gannett Pacific Corp. v. Richardson*, 59 Haw. 224, 580 P. 2d 49, 56 (1978); *State ex rel. Post-Tribune Publishing Co. v. Porter Superior Court*, 274 Ind. 408, 412 N. E. 2d 748 (1980); *Ashland Publishing Co. v. Asbury*, 612 S. W. 2d 749, 752 (Ky. App. 1980); *Great Falls Tribune v. District Court*, 186 Mont. 433, 608 P. 2d 116 (1980); *Keene Publishing Corp. v. Cheshire County Superior Court*, 119 N. H. 710, 406 A. 2d 137 (1979); *State v. Williams*, 93 N. J. 39, 459 A. 2d 641 (1983); *Westchester Rockland Newspapers v. Leggett*, 48 N. Y. 2d 430, 439, 399 N. E. 2d 518, 523 (1979); *Minot Daily News v. Holum*, 380 N. W. 2d 347 (N. D. 1986); *State ex rel. Dayton Newspapers, Inc. v. Phillips*, 46 Ohio St. 2d 457, 351 N. E. 2d 127 (1976); *Philadelphia Newspapers, Inc. v. Jerome*, 478 Pa. 484, 503, 387 A. 2d 425, 434 (1978); *Kearns-Tribune Corp. v. Lewis*, 685 P. 2d 515 (Utah 1984); *Herald Assn., Inc. v. Ellison*, 138 Vt. 529, 534, 419 A. 2d 323, 326 (1980); *Federated Publications, Inc. v. Kurtz*, 94 Wash. 2d 51, 615 P. 2d 440 (1980); *State ex rel. Herald Mail Co. v. Hamilton*, 165 W. Va. 103, 267 S. E. 2d 544 (1980); *Williams v. Stafford*, 589 P. 2d 322 (Wyo. 1979). Cf. *In re Midland Publishing*, 420 Mich. 148, 173, 362 N. W. 2d 580, 593 (1984) (proceedings leading to a person's indictment have not been open to the public).

Other courts have noted that some pretrial proceedings have no historical counterpart, but, given the importance of the pretrial proceeding to the criminal trial, the traditional right of access should still apply. See, *e. g., Iowa Freedom of Information Council v. Wifvat*, 328 N. W. 2d 920 (Iowa 1983); *Minneapolis Star and Tribune Co. v. Kammeyer*, 341 N. W. 2d 550 (Minn. 1983); *Richmond Newspapers, Inc. v. Commonwealth*, 222 Va. 574, 281 S. E. 2d 915 (1981).

4  See *State v. McKenna*, 78 Idaho 647, 309 P. 2d 206 (1957); *Davis v. Sheriff*, 93 Nev. 511, 569 P. 2d 402 (1977). Although Arizona, Iowa, Montana, North Dakota, Pennsylvania, and Utah have closure statutes based on the Field Code, see *Gannett*, 443 U.S., at 391, in each of these States the Supreme Court has found either a common-law or state constitutional right of the public to attend pretrial proceedings. See *Phoenix Newspapers, Inc. v. Superior Court*, 101 Ariz. 257, 418 P. 2d 594 (1966); *Iowa Freedom of Information Council v. Wifvat, supra; Great Falls Tribune v. District Court, supra; Minot Daily News v. Holum, supra; Commonwealth v. Hayes*, 489 Pa. 419, 414 A. 2d 318 (1980); *Kearns-Tribune Corp. v. Lewis, supra*.

The second question is whether public access to preliminary hearings as they are conducted in California plays a particularly significant positive role in the actual functioning of the process. We have already determined in *Richmond* [*12] *Newspapers, Globe,* and *Press-Enterprise I* that public access to criminal trials and the selection of jurors is essential to the proper functioning of the criminal justice system. California preliminary hearings are sufficiently like a trial to justify the same conclusion.

In California, to bring a felon to trial, the prosecutor has a choice of securing a grand jury indictment or a finding of probable cause following a preliminary hearing. Even when the accused has been indicted by a grand jury, however, he has an absolute right to an elaborate preliminary hearing before a neutral magistrate. *Hawkins v. Superior Court*, 22 Cal. 3d 584, 586 P. 2d 918 (1978). The accused has the right to personally appear at the hearing, to be represented by counsel, to cross-examine hostile witnesses, to present exculpatory evidence, and to exclude illegally obtained evidence. Cal. Penal Code Ann. §§ 859-866 (West 1985), § 1538.5 (West Supp. 1986). If the magistrate determines that probable cause exists, the accused is bound over for trial; such a finding leads to a guilty plea in the majority of cases.

It is true that unlike a criminal trial, the California preliminary hearing cannot result in the conviction of the accused and the adjudication is before a magistrate or

other judicial officer without a jury. But these features, standing alone, do not make public access any less essential to the proper functioning of the proceedings in the overall criminal justice process. Because of its extensive scope, the preliminary hearing is often the final and most important step in the criminal proceeding. [\*\*\*13] See *Waller v. Georgia, 467 U.S., at 46-47.* As the California Supreme Court stated in *San Jose Mercury-News v. Municipal Court, 30 Cal. 3d 498, 511, 638 P. 2d 655, 663 (1982),* the preliminary hearing in many cases provides "the sole occasion for public observation of the criminal justice system." See also *Richmond Newspapers,* 448 U.S., at 572.

Similarly, the absence of a jury, long recognized as "an inestimable safeguard against the corrupt or overzealous prosecutor [\*13] and against the compliant, biased, or eccentric judge," *Duncan v. Louisiana, 391 U.S. 145, 156 (1968),* makes the importance of public access to a preliminary hearing even more significant. "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers,* 448 U.S., at 572.

Denying the transcript of a 41-day preliminary hearing would frustrate what we have characterized as the "community therapeutic value" of openness. *Id., at 570.* Criminal acts, especially certain violent crimes, provoke public concern, outrage, and hostility. "When the public is aware that the law is being enforced and the criminal justice system is functioning, an outlet is provided for these [\*\*2743] understandable reactions and emotions." *Press-Enterprise I, 464 U.S., at 509.* See also H. Weihofen, The Urge to Punish 130-131 (1956); T. Reik, The Compulsion to Confess (1959). In sum:

"The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." *Press-Enterprise I, supra, at 508* (emphasis in original).

We therefore conclude that the qualified *First Amendment* right of access to criminal proceedings applies to preliminary hearings as they are conducted in California.

B

[\*\*\*LEdHR1C] [1C] [\*\*\*LEdHR2B] [2B]Since a qualified *First Amendment* right of access attaches to preliminary hearings in California under *Cal. Penal Code Ann. § 858 et seq.* (West 1985), the proceedings cannot be closed unless specific, on the record findings are made demonstrating that "closure is essential to preserve higher values [\*14] and is narrowly tailored to serve that interest." *Press-Enterprise I, supra, at 510.*See also *Globe Newspaper,* 457 U.S., at 606-607. If the interest asserted is the right of the accused to a fair trial, the preliminary hearing shall be closed only if specific findings are made demonstrating that, first, there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent [\*\*\*14] and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights. See *Press-Enterprise I, supra; Richmond Newspapers, supra,* at 581.

[\*\*\*LEdHR3B] [3B]The California Supreme Court, interpreting its access statute, concluded that "the magistrate shall close the preliminary hearing upon finding a reasonable likelihood of substantial prejudice." *37 Cal. 3d, at 781, 691 P. 2d, at 1032.*As the court itself acknowledged, the "reasonable likelihood" test places a lesser burden on the defendant than the "substantial probability" test which we hold is called for by the *First Amendment.* See *ibid.*; see also *id., at 783, 691 P. 2d, at 1033* (Lucas, J., concurring and dissenting). Moreover, that court failed to consider whether alternatives short of complete closure would have protected the interests of the accused.

[\*\*\*LEdHR11] [11]In *Gannett* we observed:

"Publicity concerning pretrial suppression hearings such as the one involved in the present case poses special risks of unfairness. The whole purpose of such hearings is to screen out unreliable or illegally obtained evidence and insure that this evidence does not become known to the jury. Cf. *Jackson v. Denno, 378 U.S. 368.* Publicity concerning the proceedings at a pretrial hearing, however, could influence public opinion against a defendant and inform potential jurors of inculpatory information wholly inadmissible at the actual trial." *443 U.S., at 378.*

[\*15]    But this risk of prejudice does not automatically justify refusing public access to hearings on every motion to suppress. Through *voir dire,*

cumbersome as it is in some circumstances, a court can identify those jurors whose prior knowledge of the case would disable them from rendering an impartial verdict. And even if closure were justified for the hearings on a motion to suppress, closure of an entire 41-day proceeding would rarely be warranted. The *First Amendment* right of access cannot be overcome by the conclusory assertion that publicity might deprive the defendant of that right. And any limitation must be "narrowly tailored to serve that interest." *Press-Enterprise I, supra, at 510.*

[**2744] The standard applied by the California Supreme Court failed to consider the *First Amendment* right of access to criminal proceedings. Accordingly, the judgment of the California Supreme Court is reversed.

*It is so ordered.*

**DISSENT BY:** STEVENS

**DISSENT**

JUSTICE STEVENS, with whom JUSTICE REHNQUIST joins as to Part II, dissenting.

The constitutional question presented by this case is whether members of the public have a *First Amendment* right to insist upon access to the transcript of a preliminary hearing during the period before the public trial, even though the accused, the prosecutor, and the trial judge have all agreed to the sealing of the transcript in order to [***15] assure a fair trial.

The preliminary hearing transcript to which petitioner sought access consists of 4,239 pages of testimony by prosecution witnesses heard over eight weeks. The testimony, contained in 47 volumes, accuses Mr. Robert Diaz, a nurse, of murdering 12 patients in the hospital in which he worked by injecting them with lethal doses of a heart drug. The transcript reveals that the defense put on no witnesses of its own.

Immediately after the Magistrate ordered the defendant bound over for trial, defense counsel moved that the transcript of the preliminary hearing be sealed to protect his client's [*16] right to a fair trial. The transcript, in the words of the Magistrate, revealed "only one side of the story." App. 28a. The transcript also contained the Magistrate's characterization of Mr. Diaz as "the most dangerous type of individual there is." *Id., at 27a.* The prosecutor did not oppose this motion, and the Magistrate, after hearing petitioner's objection, ordered the transcript sealed.

The Superior Court trial judge denied a motion to unseal the transcript. He found -- and the finding is amply supported by the record -- that "there is a reasonable likelihood that making all or any part of the transcripts public might prejudice the defendant's right to a fair and impartial trial." *Id., at 61a.* Accord, *id., at 62a.* The Magistrate had earlier rejected less restrictive alternatives to sealing the transcript, concluding that "the only way to protect" the defendant's "[fair trial] right would be to seal the transcript." *Id., at 37a.* [1]

> 1   In so ruling, the Magistrate recognized that he had "an affirmative constitutional duty to insure that a defendant has a fair trial," App. 37a, under *Gannett Co. v. DePasquale, 443 U.S. 368, 378 (1979)* ("To safeguard the due process rights of the accused, a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity. And because of the Constitution's pervasive concern for these due process rights, a trial judge may surely take protective measures even when they are not strictly and inescapably necessary" (citation omitted)).

The Court of Appeal agreed with the trial judge and denied the peremptory writ of mandate sought by petitioner. It rejected petitioner's assertion that "the superior court failed to state any reasons or make a specific finding to support the sealing order." App. to Pet. for Cert. E-11. Instead, it confirmed the trial judge's determinations that "the transcript is indicative of only the prosecutorial side of the case," *id.,* at E-14; that the public's right of access was overborne by the "reasonable likelihood of substantial prejudice" to "the defendant's right to a fair trial," *id.,* at E-9; and that "[alternatives] to sealing the transcript would not suffice in this [*17] case," *id.,* at E-14. [2] The California Supreme Court similarly denied petitioner's request for a peremptory writ of mandate, affirming that a preliminary hearing transcript can be sealed upon a showing of a "reasonable likelihood of substantial prejudice which would impinge upon the right to a [**2745] fair trial." *37 Cal. 3d 772, 781, 691 P. 2d 1026, 1032 (1984).*

> 2   Indeed, the Court of Appeal determined that "[the] release of the transcript and employment of these alternatives would tend to *exacerbate* the existing prejudice." App. to Pet. for Cert. E-15 (emphasis added and citation omitted).

In view of the above, the trial [***16] judge had an obvious and legitimate reason for refusing to make the transcript public any sooner than he did. His decision plainly did not violate the defendant's right to a

public trial under the *Sixth Amendment*, for it was the defendant who objected to release of the transcript. See *Gannett Co. v. DePasquale, 443 U.S. 368, 383-384 (1979)*. In my opinion, the judge's decision did not violate the *First Amendment* either.

I

Although perhaps obvious, it bears emphasis that the *First Amendment* right asserted by petitioner is not a right to publish or otherwise communicate information lawfully or unlawfully acquired. That right, which lies at the core of the *First Amendment* and which erased the legacy of restraints on publication against which the drafters of that Amendment rebelled, see *Grosjean v. American Press Co., 297 U.S. 233, 245-250 (1936)*, may be overcome only by a governmental objective of the highest order attainable in a no less intrusive way. See, e. g., *Smith v. Daily Mail Publishing Co., 443 U.S. 97, 101-106 (1979); Landmark Communications, Inc. v. Virginia, 435 U.S. 829, 837-845 (1978); Oklahoma Publishing Co. v. District Court, 430 U.S. 308, 310-312 (1977) (per curiam); Nebraska Press Assn. v. Stuart, 427 U.S. 539, 556-570 (1976); Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 487-497 (1975)*. The *First Amendment* right asserted [*18] by petitioner in this case, in contrast, is not the right to publicize information in its possession, but the right to acquire access thereto.

I have long believed that a proper construction of the *First Amendment* embraces a right of access to information about the conduct of public affairs.

"As Madison wrote:Z5'"A popular Government, without popular information, or the means of acquiring it, is but a Prologue to a Farce or a Tragedy; or, perhaps both. Knowledge will forever govern ignorance: And a people who mean to be their own Governors, must arm themselves with the power which knowledge gives.' 9 Writings of James Madison 103 (G. Hunt ed. 1910).

"It is not sufficient, therefore, that the channels of communication be free of governmental restraints. Without some protection for the acquisition of information about the operation of public institutions such as prisons by the public at large, the process of self-governance contemplated by the Framers would be stripped of its substance.

"For that reason information gathering is entitled to some measure of constitutional protection." *Houchins v. KQED, Inc., 438 U.S. 1, 31-32 (1978)* (STEVENS, J., dissenting).[3]

---

3 See *Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 586-589 (1980)* (BRENNAN, J., concurring in judgment); *Saxbe v. Washington Post Co., 417 U.S. 843, 862-864 (1974)* (POWELL, J., dissenting). In a footnote to my separate writing in *Houchins*, I appended a quotation from Justice Stewart's dissenting opinion in *Branzburg v. Hayes, 408 U.S. 665, 728 (1972)* (emphasis added), where he stated that "a right to gather news, *of some dimensions*, must exist." The majority agreed with this observation, acknowledging that "news gathering is not without its *First Amendment* protections," *id.*, at 707, for "without some protection for seeking out the news, freedom of press could be eviscerated," *id.*, at 681. See also *Zemel v. Rusk, 381 U.S. 1, 16-17 (1965)* ("The right to speak and publish does not carry with it the *unrestrained* right to gather information" (emphasis added)).

[*19] Neither [***17] our elected nor our appointed representatives may abridge the free flow [**2746] of information simply to protect their own activities from public scrutiny. An official policy of secrecy must be supported by some legitimate justification that serves the interest of the public office. Thus, in *Pell v. Procunier, 417 U.S. 817 (1974)*, and *Saxbe v. Washington Post Co., 417 U.S. 843 (1974)*, we confirmed that the warden's regulation of prearranged inmate press interviews had a legitimate disciplinary and penological basis and was "not part of an attempt by the State to conceal the conditions in its prisons or to frustrate the press' investigation and reporting of those conditions." *Pell v. Procunier, 417 U.S., at 830*. Accord, *Saxbe v. Washington Post Co., 417 U.S., at 848*. Likewise, in *Gannett Co. v. DePasquale, 443 U.S. 368 (1979)*, we held that any *First Amendment* access right "was given all appropriate deference by the state *nisi prius* court," *id.*, at 392, which had entered a "finding on the record that an open suppression hearing would pose a 'reasonable probability of prejudice to these defendants,'" *id.*, at 376. Conversely, in *Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980)*, a violation of the *First Amendment* was established by the "total absence of any record justification for the closure order," *id.*, at 584 (STEVENS, J., concurring). Accord, *id.*, at 580-581 (opinion of BURGER, C. J.). The same constitutional infirmity afflicted the order excluding the public from attending the testimony of minor victims in a sex-offense trial in *Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 608-609 (1982)* ("the record indicates that the victims may have been willing to testify despite the presence of the press" (footnote omitted)), and the order closing the *voir dire* proceedings and sealing the transcript in *Press-Enterprise Co. v. Superior Court, 464*

U.S. 501, 510-511 (1984) ("prolonged closure was unsupported by findings"); *id., at 513* ("trial judge provided no explanation" for his [*20] "broad order"); *id., at 515* (BLACKMUN, J., concurring). Cf. *Waller v. Georgia, 467 U.S. 39, 48, n. 7, 49, n. 8 (1984).* [4]

> 4  In *Houchins* I explained why I believed that the plaintiffs were entitled to put an end to the warden's policy of concealing prison conditions from the public. "Those conditions are wholly without claim to confidentiality. While prison officials have an interest in the time and manner of public acquisition of information about the institutions they administer, there is no legitimate penological justification for concealing from citizens the conditions in which their fellow citizens are being confined." *438 U.S., at 35-36.* It seemed clear that an "official prison policy of concealing such knowledge from the public by arbitrarily cutting off the flow of information at its source abridges the freedom of speech and of the press protected by the *First* and *Fourteenth Amendments to the Constitution.*" *Id., at 38* (footnote omitted).

But [***18] it has always been apparent that the freedom to obtain information that the government has a legitimate interest in not disclosing, see *Globe Newspaper Co. v. Superior Court, 457 U.S., at 621* (STEVENS, J., dissenting), is far narrower than the freedom to disseminate information, which is "virtually absolute" in most contexts, *Richmond Newspapers, Inc. v. Virginia, 448 U.S., at 582* (STEVENS, J., concurring). In this case, the risk of prejudice to the defendant's right to a fair trial is perfectly obvious. For me, that risk is far more significant than the countervailing interest in publishing the transcript of the preliminary hearing sooner rather than later. Cf. *Gannett Co. v. DePasquale, 443 U.S., at 393* (upholding closure of suppression hearing in part because "any denial of access in this case was not absolute but only temporary"). The interest in prompt publication -- in my view -- is no greater than the interest in prompt publication of grand jury transcripts. As explained [**2747] more fully below, we have always recognized the legitimacy of the governmental interest in the secrecy of grand jury proceedings, and I am unpersuaded that the difference between such proceedings and the rather elaborate procedure for determining probable cause that California has adopted strengthens the *First Amendment* claim to access asserted in this case.

[*21] II

The Court nevertheless reaches the opposite conclusion by applying the "two complementary considerations," *ante,* at 8, of "experience and logic," *ante,* at 9. In my view, neither the Court's reasoning nor the result it reaches is supported by our precedents.

The historical evidence proffered in this case is far less probative than the evidence adduced in prior cases granting public access to criminal proceedings. In those cases, a common-law tradition of openness at the time the *First Amendment* was ratified suggested an intention and expectation on the part of the Framers and ratifiers that those proceedings would remain presumptively open. Thus, in *Richmond Newspapers, Inc. v. Virginia, 448 U.S., at 564,* THE CHIEF JUSTICE explained that "[what] is significant for present purposes is that throughout its evolution, the trial has been open to all who cared to observe." "[The] historical evidence demonstrates conclusively that *at the time when our organic laws were adopted,* criminal trials both here and in England had long been presumptively open." *Id., at 569* (emphasis added). History was relevant because it demonstrated that "[the] *Bill of Rights* was enacted against the backdrop of the long history of trials being presumptively open. Public access to trials was then regarded as an important aspect of the process itself." *Id., at 575.* The opinion for the Court in *Globe Newspaper Co. v. Superior Court, 457 U.S., at 605,* [***19] which also concerned the presumptive openness of a criminal trial, relied expressly on the opinion of THE CHIEF JUSTICE in *Richmond Newspapers* for the point that criminal trials were open "at the time when our organic laws were adopted." *448 U.S., at 569.* Later, in *Press-Enterprise Co. v. Superior Court,* the Court quoted the identical passage from *Richmond Newspapers,* see *464 U.S., at 505,* and concluded that "[public] jury selection thus was the common practice in America when the Constitution was [*22] adopted," *id., at 508.* To dispel any doubt regarding the significance of this evidence, we explained that "the question we address -- whether the *voir dire* process must be open -- focuses on First . . . Amendment values *and the historical backdrop against which the First Amendment was enacted.*" *Id., at 509, n. 8* (emphasis added). Thus, in our prior cases history mattered primarily for what it revealed about the intentions of the Framers and ratifiers of the *First Amendment.*

In this case, however, it is uncontroverted that a common-law right of access did not inhere in preliminary proceedings at the time the *First Amendment* was adopted, and that the Framers and ratifiers of that provision could not have intended such proceedings to

remain open. As Justice Stewart wrote for the Court in *Gannett Co. v. DePasquale*:

"[There] exists no persuasive evidence that at common law members of the public had any right to attend pretrial proceedings; indeed, there is substantial evidence to the contrary. By the time of the adoption of the Constitution, . . . pretrial proceedings, precisely because of the . . . concern for a fair trial, were never characterized by the same degree of openness as were actual trials.

"Under English common law, the public had no right to attend pretrial proceedings. E. g., E. Jenks, The Book of English Law 75 (6th ed. 1967) ('It must, of course, be remembered, that the principle of publicity only applies to the actual trial of a case, not necessarily to the [**2748] preliminary or prefatory stages of the proceedings . . .'); F. Maitland, Justice and Police 129 (1885) (The 'preliminary examination of accused persons had gradually assumed a very judicial form . . . . The place in which it is held is indeed no "open court," the public can be excluded if the magistrate thinks that the ends of justice will thus be best answered . . .'). See also Indictable Offences Act, 11 & 12 Vict., ch. 42, § 19 (1848) (providing [*23] that pretrial proceedings should not be deemed an open court and that the public could therefore be excluded); Magistrates' Courts Act, 15 & 16 Geo. 6 & 1 Eliz. 2, ch. 55, § 4(2) (1952) (same)." 443 U.S., at 387-389 (footnotes omitted). [5]

[***20] Justice Stewart included in his discussion the following quotation from Lord Ellenborough; the Law Lord explains, in reasons as relevant today as they were when the *Bill of Rights* was adopted, the historical basis for the closure of preliminary proceedings:

"If any thing is more important than another in the administration of justice, it is that jurymen should come to the trial of those persons on whose guilt or innocence they are to decide, with minds pure and unprejudiced. . . . Trials at law fairly reported, although they may occasionally prove injurious to individuals, have been held to be privileged. Let them continue so privileged. . . . But these preliminary examinations have no such privilege. Their only tendency is to prejudice those whom the law still presumes to be innocent, and to poison the sources of justice." *King v. Fisher*, 2 Camp. 563, 570-571, 170 Eng. Rep. 1253, 1255 (N. P. 1811).

  5  Accord, Geis, Preliminary Hearings and the Press, 8 UCLA L. Rev. 397, 406 (1961) ("Preliminary hearings in the American colonies closely followed the prescriptions of the sixteenth-century English statutes" (footnote omitted)). THE CHIEF JUSTICE pointed out in his concurring opinion in *Gannett* that "[at] common law there was a very different presumption [*i. e.*, in favor of closure] for proceedings which preceded the trial." 443 U.S., at 394. "[No] one ever suggested that there was any 'right' of the public to be present at such pretrial proceedings as were available in that time [that the *Bill of Rights* was adopted]." *Id.*, at 396.

In the final analysis, the Court's lengthy historical disquisition demonstrates only that in many States preliminary proceedings are generally open to the public. See *ante*, at 10-11, n. 3. In other States, numbering California and Michigan among them, see *In re Midland Publishing Co.*, [*24] 420 Mich. 148, 162, 172-174, 362 N. W. 2d 580, 588, 593-594 (1984), such proceedings have been closed. [6] To paraphrase the Court's [**2749] analysis in *McMillan v. Pennsylvania, 477 U.S. 79, 90 (1986)* (footnote omitted), "the fact that the States" have adopted different rules regarding the openness of preliminary proceedings "is merely a reflection of our federal system, which demands '[tolerance] for a spectrum of state procedures [***21] dealing with a common problem of law enforcement,' *Spencer v. Texas, 385 U.S. 554, 566 (1967)*. That [California's] particular approach has been adopted in few other States does not render [its] choice unconstitutional." [*25] As Justice Stewart admonished: we must not "[confuse] the existence of a constitutional right with the common-law tradition of open . . . proceedings." *Gannett Co. v. DePasquale, 443 U.S., at 389, n. 19*. The recent common-law developments reported by the Court are relevant, if at all, only insofar as they suggest that preliminary proceedings merit the "beneficial effects of public scrutiny." *Cox Broadcasting Corp. v. Cohn, 420 U.S., at 492*. The Court's historical crutch cannot carry the weight of opening a preliminary proceeding that the State has ordered closed; that determination must stand or fall on whether it satisfies the second component of the Court's test.

  6  Ironically, California and Michigan are both States in which preliminary proceedings are generally open to the public, and are thus -- surprisingly -- part of the recent common-law trend in favor of openness relied on by the Court. It is only on the facts of record in this case that the California courts ordered the transcript sealed. Since many -- if not most -- of the state-court decisions collected by the Court hold that the right to a public preliminary hearing is

personal to the accused, see, *e. g.*, *State v. Porter Superior Court*, 274 Ind. 408, 409-410, 412 N. E. 2d 748, 750 (1980); *Azbill v. Fisher*, 84 Nev. 414, 419, 442 P. 2d 916, 918-919 (1968), or, more commonly, that it is overcome by a showing of potentially prejudicial publicity equivalent to or less than that required in California, see, *e. g.*, *State v. Burak*, 37 Conn. Supp. 627, 630, 431 A. 2d 1246, 1248 (1981) ("likelihood of prejudice"); *United States v. Edwards*, 430 A. 2d 1321, 1345 (D. C. 1981) ("likelihood"), cert. denied, 455 U.S. 1022 (1982); *Gannett Pacific Corp. v. Richardson*, 59 Haw. 224, 233, 580 P. 2d 49, 56 (1978) ("substantial likelihood"); *Westchester Rockland Newspapers v. Leggett*, 48 N. Y. 2d 430, 442, 399 N. E. 2d 518, 525 (1979) ("strong likelihood"); *Kearns-Tribune Corp. v. Lewis*, 685 P. 2d 515, 523 (Utah 1984) ("'realistic likelihood of prejudice'"); *Richmond Newspapers, Inc. v. Commonwealth*, 222 Va. 574, 589, 281 S. E. 2d 915, 923 (1981) ("likelihood"); *Federated Publications, Inc. v. Kurtz*, 94 Wash. 2d 51, 62, 615 P. 2d 440, 446 (1980) ("likelihood of jeopardy"), courts in these States would presumably have also denied access if presented with the facts of this case. On this observation, and in view of the fact that the reasoning of the state courts is heavily dependent on this Court's cases granting access to criminal proceedings (even if they are ultimately grounded in state law), it is remarkable that the Court finds any historical basis for a public right of access to preliminary proceedings on a showing in excess of that required in California and met by the defendant in this case.

If the Court's historical evidence proves too little, the "'value of openness,'" *ante*, at 13 (quoting *Press-Enterprise Co. v. Superior Court*, 464 U.S., at 508), on which it relies proves too much, for this measure would open to public scrutiny far more than preliminary hearings "as they are conducted in California" (a comforting phrase invoked by the Court in one form or another more than eight times in its opinion). [7] In brief, the Court's rationale for opening the "California preliminary hearing" is that it "is often the final and most important step in the criminal proceeding"; that it provides "'the sole occasion for public observation of the criminal justice system'"; that it lacks the protective presence [*26] of a jury; and that closure denies an outlet for community catharsis. *Ante*, at 12, 13 (quotation omitted). The obvious defect in the Court's approach is that its reasoning applies to the traditionally secret grand jury with as much force as it applies to California preliminary hearings. A grand jury indictment is just as likely to be the "final step" in a criminal proceeding and the "sole occasion" for public scrutiny as is a preliminary hearing. Moreover, many critics of the grand jury maintain that the grand jury protects the accused less well than does a legally knowledgeable judge who personally presides over a preliminary hearing. See *Hawkins v. Superior Court*, 22 Cal. 2d 584, 590, 586 P. 2d 916, 919-920 (1978) (holding deprivation of preliminary hearing to constitute a denial of equal protection under State Constitution in part because "'the [***22] grand jury is the total captive of the prosecutor who, if he is candid, will concede that he can indict anybody, at any time, for almost anything, before any grand jury'" (quoting Campbell, Eliminate the Grand Jury, 64 J. Crim. L. & C. 174 (1973))). Finally, closure of grand juries denies an outlet for community rage. When the Court's explanatory veneer is stripped away, what emerges is the reality that the California preliminary hearing is functionally identical [**2750] to the traditional grand jury. As THE CHIEF JUSTICE emphasized by his quotation of *Cox v. Coleridge*, 1 B. & C. 37, 49-50, 107 Eng. Rep. 15, 19-20 (1822), in his concurring opinion in *Gannett Co. v. DePasquale*, 443 U.S., at 395, n. (emphasis added):

"'It [the proceeding] is only a preliminary inquiry, whether there be sufficient ground to commit the prisoner for trial. The proceeding before the grand jury is *precisely of the same nature, and it would be difficult, if the right exists in the present case, to deny it in that.* This being only a preliminary inquiry, and not a trial, makes, in my mind, all the difference.'"

> 7 Given the Court's focus on the history of preliminary proceedings in general, and its reliance on the broad values served by openness, see *ante*, at 13, I do not see the relevance of the fact that preliminary proceedings in California bear an outward resemblance to criminal trials. To the extent that it matters that in California "[the] accused has the right to personally appear at the hearing, to be represented by counsel, to cross-examine hostile witnesses, to present exculpatory evidence, and to exclude illegally obtained evidence," *ante*, at 12 (citing Cal. Penal Code Ann. §§ 859-866 (West 1985), § 1538.5 (West 1982)), it bears mention that many other States have reformed their grand juries to include one or more of these procedural reforms, see W. LaFave & J. Israel, Criminal Procedure § 15.2(b) (1984). After today's decision, one can only

wonder whether the public enjoys a right of access to any or all of these proceedings as well.

The Court's reasoning -- if carried to its logical outcome -- thus contravenes the "long-established policy that maintains [*27] the secrecy of the grand jury proceedings in the federal courts" and in the courts of 19 States. *United States v. Procter & Gamble Co., 356 U.S. 677, 681 (1958).* "Despite the fact that news gathering may be hampered, the press is regularly excluded from grand jury proceedings." *Branzburg v. Hayes, 408 U.S. 665, 684-685 (1972).* This Court has previously described grand jury secrecy as "indispensable," *United States v. Johnson, 319 U.S. 503, 513 (1943),* and has remarked that "'the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings,'" *United States v. Sells Engineering, Inc., 463 U.S. 418, 424 (1983)* (quoting *Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 218 (1979))*.[8]

> 8   Five reasons are commonly given for the policy of grand jury secrecy:
>
> "'(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect the innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.'" *Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S., at 219, n. 10* (quoting *United States v. Rose, 215 F.2d 617, 628-629 (CA3 1954))*; *United States v. Procter & Gamble Co., 356 U.S. 677, 681, n. 6 (1958)* (same). See *Illinois v. Abbott & Associates, Inc., 460 U.S. 557, 566-567, n. 11 (1983).*

In fact, the logic of the Court's access right extends even beyond the confines of the criminal justice system to encompass proceedings held on the civil side of the docket as well. As Justice Stewart explained:

"If the existence of a common-law rule were the test for whether [***23] there is a *Sixth Amendment* public right to a public trial, therefore, there would be such a right in civil as well as criminal cases. . . . In short, there is no principled basis upon which a public right of access to judicial [*28] proceedings can be limited to criminal cases if the scope of the right is defined by the common law rather than the text and structure of the Constitution.

"Indeed, many of the advantages of public criminal trials are equally applicable in the civil trial context. . . . Thus, in some civil cases the public interest in access, and the salutary effect of publicity, may be as strong as, or stronger than, in most criminal cases." *Gannett Co. v. DePasquale, 443 U.S., at 386-387, n. 15.*

Cf. *Seattle Times Co. v. Rhinehart, 467 U.S. 20, 29-37 (1984)* (newspaper not allowed [**2751] to publish information to which it was privy as a litigant in a civil action). Despite the Court's valiant attempt to limit the logic of its holding, the *ratio decidendi* of today's decision knows no bounds.

By abjuring strict reliance on history and emphasizing the broad value of openness, the Court tacitly recognizes the importance of public access to government proceedings generally. Regrettably, the Court has taken seriously the stated requirement that the sealing of a transcript be justified by a "compelling" or "overriding" governmental interest and that the closure order be "'narrowly tailored to serve that interest.'" *Ante,* at 9 (quoting *Press-Enterprise Co. v. Superior Court, 464 U.S., at 501*); *Press-Enterprise Co. v. Superior Court, 464 U.S., at 510* (quoting *Globe Newspaper Co. v. Superior Court, 457 U.S., at 607*). See *ante,* at 13-14. This standard -- as well as the two-part test of history and logic that formed the basis for the decision today -- originated as two "helpful principles" in JUSTICE BRENNAN's eloquent concurrence in *Richmond Newspapers, Inc. v. Virginia, 448 U.S., at 589.* That concurrence recognized that "'[there] are few restrictions on action which could not be clothed by ingenious argument in the garb of decreased data flow,'" *id., at 588* (quoting *Zemel v. Rusk, 381 U.S. 1, 16-17 (1965))*, and -- in contrast with the decision today -- stressed that "[an] assertion of the prerogative to gather information must accordingly be assayed by considering the information sought [*29] and the opposing interests invaded," *448 U.S., at 588* (footnote omitted) -- a determination "as much a matter of sensitivity to practical necessities as . . . of abstract reasoning," *ibid.* The cases denying access have done so on a far lesser showing than that required by a compelling governmental interest/least restrictive means analysis, see *supra,* at 19-20, and cases granting access have recognized as legitimate grounds for closure interests that fall far short of those traditionally thought to be "compelling," see *Press-Enterprise Co. v. Superior Court, 464 U.S., at 511-512* (privacy interest of

venirepersons sufficient reason to close presumptively open *voir dire* proceeding); see also *Richmond* [***24] *Newspapers, Inc. v. Virginia*, 448 *U.S., at 600* (Stewart, J., concurring in judgment).

The presence of a legitimate reason for closure in this case requires an affirmance. The constitutionally grounded fair trial interests of the accused if he is bound over for trial, and the reputational interests of the accused if he is not, provide a substantial reason for delaying access to the transcript for at least the short time before trial. By taking its own verbal formulation seriously, the Court reverses -- without comment or explanation or any attempt at reconciliation -- the holding in *Gannett* that a "reasonable probability of prejudice" is enough to overcome the *First Amendment* right of access to a preliminary proceeding. It is unfortunate that the Court neglects this opportunity to fit the result in this case into the body of precedent dealing with access rights generally. I fear that today's decision will simply further unsettle the law in this area.

I respectfully dissent.

## REFERENCES

*First Amendment* freedom of speech or press as giving news media right of access to criminal proceedings

*16A Am Jur 2d, Constitutional Law 504; 21A Am Jur 2d, Criminal Law 668, 879; 75 Am Jur 2d, Trial 33*

9 Federal Procedure, L Ed, Criminal Procedure 22:804-22:809

23 Am Jur Pl & Pr Forms (Rev), Trial, Form 63.1

1 Am Jur Trials 303, Controlling Trial Publicity

USCS, *Constitution, Amendments 1* and *6*

US L Ed Digest, Constitutional Law 944; Trial 2.5

Index to Annotations, Criminal Law; Freedom of Speech and Press; Preliminary or Pretrial Matters; Trial

Annotation References:

Federal constitutional right to public trial in criminal cases. *61 L Ed 2d 1018.*

What circumstances render civil case, or issues arising therein, moot so as to preclude Supreme Court's consideration of their merits. *44 L Ed 2d 745.*

The Supreme Court and the right of free speech and press. *93 L Ed 1151, 2 L Ed 2d 1706, 11 L Ed 2d 1116, 16 L Ed 2d 1053, 21 L Ed 2d 976.*

Pretrial publicity in criminal cases as affecting defendant's right to fair trial. *10 L Ed 2d 1243.*

Right of accused to have press or other media representatives excluded from criminal trial. 49 ALR3d 1007.

Right of person accused of crime to exclude public from preliminary hearing or examination. 31 ALR3d 816.

Exclusion of public during criminal trial. 48 ALR2d 1436.